**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re D.S.,* Slip Opinion No. 2016-Ohio-1027.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-1027

IN RE D.S.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re D.S.,* Slip Opinion No. 2016-Ohio-1027.]**

*Juvenile delinquency—Classification as juvenile-sex-offender registrant—R.C. 2152.83(B)—Juvenile court had statutory authority to make finding at deferred classification hearing held after delinquent child's release from secure facility regarding child's age at time of offenses—Juvenile court's imposition of sex-offender classification upon juvenile's release from secure facility did not violate prohibition against double jeopardy— Juvenile court's imposition of offender-registrant status with corresponding registration and notification requirements that continue beyond juvenile's reaching age 21 did not violate his due-process rights—Court of appeals' judgment affirmed.*

(No. 2014-0607—Submitted March 25, 2015—Decided March 16, 2016.)

APPEAL from the Court of Appeals for Licking County,

No. 13-CA-58, 2014-Ohio-867.

———————————————

**SYLLABUS OF THE COURT**

1.  When a delinquent child disputes that he or she was at least 14 years old at the time the offenses were committed and age cannot be established from the undisputed allegations in the complaint, the juvenile court must make a determination of age eligibility before or during the sex-offender classification hearing and prior to subjecting the child offender to registration and notification requirements under R.C. 2152.82 through 2152.86 and Chapter 2950.

2.  Conducting a sex-offender-classification hearing under R.C. 2152.83 upon a delinquent child's release from a secure facility does not violate the prohibition against double jeopardy.

3.  The imposition of juvenile-offender-registrant status under R.C. 2152.82 or 2152.83(B) with corresponding registration and notification requirements that continue beyond the offender's reaching age 18 or 21 does not violate the offender's due-process rights.

———————————————

**O'CONNOR, C.J.**

{¶ 1} In this appeal, we address the scheme for classifying juvenile sex offenders under R.C. 2152.83(B). We conclude that a determination of the juvenile offender's age at the time of the offense is a condition precedent to the application of that scheme but can be made any time prior to or during the classification hearing. We also conclude that the imposition of classification upon release from a secure facility and for a time period beyond the offender's attainment of age 18 or 21 does not violate the juvenile offender's due-process rights or the prohibition against double jeopardy of the United States and Ohio Constitutions. We accordingly affirm the judgment of the court of appeals.

**RELEVANT BACKGROUND**

**{¶ 2}** On August 20, 2010, the state filed a complaint against appellant, D.S., a juvenile, alleging two counts of gross sexual imposition and one count of public indecency. The victim was D.S.'s younger sibling. There was no specific allegation in the complaint regarding D.S.'s age at the time of the offenses, but D.S.'s date of birth was listed. The complaint alleged that the gross-sexual-imposition offenses occurred between August 2009 and June 2010. Thus, D.S. was 13 years old during a portion of the time frame during which, according to the complaint, the gross-sexual-imposition offenses were committed and 14 years old for the remainder of the time frame.

**{¶ 3}** On October 13, 2010, D.S. admitted to the two counts of gross sexual imposition and the state dismissed the public-indecency charge. The juvenile court adjudicated D.S. delinquent on the two charges and postponed final disposition for six to seven weeks in order to review a pre-disposition report.

**{¶ 4}** At disposition on December 8, 2010, the juvenile court ordered D.S. committed to institutionalization with the Ohio Department of Youth Services ("DYS") for two consecutive terms of at least six months but not beyond D.S.'s 21st birthday. The judgment entry of disposition also contained a handwritten notation that read: "Classification as a Juvenile Sex Offender Registrant is DEFERRED OR DELAYED Pending Efforts at Rehabilitation while committed to ODYS."

**{¶ 5}** DYS released D.S. in March 2013, and the court scheduled a sex-offender-classification hearing for April 17, 2013. Two days prior to the hearing, D.S. moved to oppose his classification as a juvenile-sex-offender registrant, arguing that he was ineligible for classification because he was under 14 years of age at the time the offenses were committed and because classification would violate the constitutional prohibition against double jeopardy. D.S. also requested, and the court granted, a continuance of the classification hearing.

**{¶ 6}** By memorandum dated April 17, 2013, the juvenile court found that the issue whether D.S. was 14 years of age at the time of the offenses would be the subject of an evidentiary hearing. The court explained, "[I]f the State of Ohio believes that sex offender registration is warranted, the State will have to present evidence to establish the youth's age at the time of the commission of the offense. The issue cannot be resolved without an evidentiary hearing."

**{¶ 7}** On April 30, 2013, the juvenile court rejected D.S.'s constitutional challenge to classification, denied D.S.'s request to cancel the classification hearing, and scheduled a hearing "to determine whether or not [D.S.] is subject to classification as a juvenile sex offender registrant." In so doing, the court stated that it "could not have entered [the dispositional] order if the youth had not been at least 14 years of age at the time of the commission of the offenses." But the court also stated that D.S. could present evidence that he was only 13 years old at the time of the offenses.

**{¶ 8}** On June 17, 2013, the court held a hearing with a dual purpose: (1) an evidentiary hearing to determine whether D.S. was 14 years old at the time of the offenses and (2) a classification hearing to determine whether D.S. should be classified as a juvenile sex offender. At the beginning of the hearing, counsel for D.S. requested a ruling on his prior motion that holding an evidentiary hearing would violate D.S.'s constitutional rights. The court denied the motion and proceeded.

**{¶ 9}** During the hearing, the court explained that the evidentiary hearing and classification hearing were "all part and parcel." The court heard testimony from a Licking County Department of Job and Family Services social worker and a Reynoldsburg Police Department detective, both of whom had investigated the allegations against D.S. Based on this testimony, the court found that D.S. "committed at least one offense, at least one count of gross sexual imposition when he was 14 years of age."

**{¶ 10}** Next, the court heard argument regarding whether the court should exercise its discretion to classify D.S. as a juvenile-sex-offender registrant and, if so, the appropriate tier of classification. The court found that D.S. should be designated a juvenile offender registrant and classified as a Tier II offender, which requires him to register in person with the appropriate sheriff every six months for a period of 20 years. The court explained that attainment of age 18 or 21 should not affect or terminate the order.

**{¶ 11}** On D.S.'s appeal, the Fifth District Court of Appeals affirmed. Specifically, the appellate court found that it was proper for the juvenile court to consider D.S.'s age at the time of the offenses during the classification hearing. 2014-Ohio-867, ¶ 47. The appellate court also rejected D.S.'s arguments that his classification violated the Double Jeopardy Clauses of the United States and Ohio Constitutions and that the classification imposed a punitive sanction beyond the age jurisdiction of the juvenile court in violation of D.S.'s due-process rights. *Id.* at ¶ 76.

**{¶ 12}** We accepted review of D.S.'s discretionary appeal on the following propositions:

> 1. A juvenile court is without authority to hold an evidentiary hearing after a youth's adjudication and disposition in order to allow the State to prove that a child was age-eligible for registration under Senate Bill 10. *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, 982 N.E.2d 684.
>
> 2. The timing mechanism of R.C. 2152.83(B) is unconstitutional because the imposition of classification at any time other than disposition violates the Double Jeopardy Clauses of the United States and Ohio Constitutions. *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, 982 N.E.2d 684.

3. The imposition of a punitive sanction that extends beyond the age jurisdiction of the juvenile court violates the Due Process Clauses of the United States and Ohio Constitutions.

*See* 139 Ohio St.3d 1428, 2014-Ohio-2725, 11 N.E.3d 284.

## ANALYSIS

**{¶ 13}** The age of a delinquent child at the time the offense was committed determines whether and how the child may be classified as a sex offender. Sections 2152.82 to 2152.86 and Chapter 2950 of the Revised Code delineate Ohio's statutory scheme for juvenile-sex-offender classification and registration. R.C. 2152.191 identifies which juvenile offenders are subject to that scheme:

If a child is adjudicated a delinquent child for committing a sexually oriented offense or a child-victim oriented offense, *if the child is fourteen years of age or older at the time of committing the offense,* and if the child committed the offense on or after January 1, 2002, both of the following apply:

(A) Sections 2152.82 to 2152.86 and Chapter 2950 of the Revised Code apply to the child and the adjudication.

(B) In addition to any order of disposition it makes of the child under this chapter, the court may make any determination, adjudication, or order authorized under sections 2152.82 to 2152.86 and Chapter 2950. of the Revised Code and shall make any determination, adjudication, or order required under those sections and that chapter.

(Emphasis added.) Thus, as a threshold matter, only a child 14 years of age or older at the time of the offense is subject to classification and the corresponding registration requirements.

**{¶ 14}** The age of the child at the time the offense was committed is also relevant to whether a child offender is subject to mandatory or discretionary classification as a sex offender. Pursuant to R.C. 2152.83(B), classification is discretionary for juvenile offenders who are 14 or 15 years of age at the time the offense was committed and who are not subject to R.C. 2152.82 (repeat-offender classification) or R.C. 2152.86 (serious-youthful-offender classification). *See In re I.A.*, 140 Ohio St.3d 203, 2014-Ohio-3155, 16 N.E.3d 653, ¶ 6. The court may impose classification under R.C. 2152.83(B) only after it conducts a hearing to consider certain statutory factors and determine whether the child should be labeled a juvenile offender registrant.[1] R.C. 2152.83(B)(2). If the judge determines that it is appropriate to impose juvenile-offender-registrant status, the judge must conduct a tier-classification hearing to determine whether the child should be classified as a Tier I, II, or III sex offender. R.C. 2152.83(C) and 2152.831.

---

[1] Under R.C. 2152.83(B)(2), a court must consider "all relevant factors, including, but not limited to" the following six factors set forth in R.C. 2152.83(D):

> (1) The nature of the sexually oriented offense or the child-victim oriented offense committed by the child;
> (2) Whether the child has shown any genuine remorse or compunction for the offense;
> (3) The public interest and safety;
> (4) The factors set forth in division (K) of section 2950.11 of the Revised Code, provided that references in the factors as set forth in that division to "the offender" shall be construed for purposes of this division to be references to "the delinquent child;"
> (5) The factors set forth in divisions (B) and (C) of section 2929.12 of the Revised Code as those factors apply regarding the delinquent child, the offense, and the victim;
> (6) The results of any treatment provided to the child and of any follow-up professional assessment of the child.

*Timing of D.S.'s age-eligibility determination*

{¶ 15} In *I.A.*, we held that when a delinquent child has been committed to a secure facility, the juvenile court may hold a classification hearing pursuant to R.C. 2152.83(B) upon release from the facility. *I.A.* at ¶ 18. But the threshold issue in this appeal is whether the statutory scheme permits the court, at a deferred classification hearing held after the child is released from a DYS facility, to make a finding regarding the delinquent child's age at the time of the offense. Here, there is no dispute that at disposition, the juvenile court did not record a finding regarding D.S.'s age at the time the offenses were committed. Nor was such a finding otherwise in the record from D.S.'s adjudication. Age was not alleged in the complaint, and the offenses purportedly occurred when D.S. was 13 and 14 years old. But age was not a necessary element of a delinquency determination for the offenses charged.

{¶ 16} D.S. contends that the disposition was a final order that the court lacks jurisdiction to reopen for an evidentiary determination of age. Therefore, according to D.S., a finding at a deferred classification hearing regarding his age is not proper. The state concedes that age is a condition precedent to juvenile-sex-offender-registrant status. But it contends that the finding regarding the offender's age at the time of the offense can be made as it was here.

{¶ 17} The statutory scheme does not expressly mandate when a court must make a determination of a delinquent child's age at the time of the offense in order to impose juvenile-sex-offender-registrant status. But the plain language of R.C. 2152.191 makes clear that the child offender must have been at least age 14 at the time of the offense to be subject to juvenile-offender-registrant status. Thus, in circumstances like those present here, in which the delinquent child contends that he or she was under age 14 at the time the offenses were committed and the dispute cannot be resolved on the face of undisputed allegations in the complaint, we hold that the court must make a finding regarding age eligibility before subjecting the

child to classification. However, that age-eligibility finding may occur, as it did here, prior to or at the classification hearing.

{¶ 18} Here, the disposition order stated that D.S.'s classification as a juvenile-sex-offender registrant was "deferred or delayed" while D.S. was committed to DYS. Prior to classifying D.S. as a juvenile-offender registrant, the court found that D.S. was 14 years of age at the time he committed "at least" one offense. Thus, the court determined that D.S. was eligible under R.C. 2152.191 to be subject to juvenile-offender-registrant status before classifying him as a juvenile-offender registrant and imposing the corresponding registration and notification requirements.

{¶ 19} Because, as we held in *I.A.*, the statute expressly permits a classification hearing upon the child's release from a secure facility, the circumstances here are distinguishable from *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, 982 N.E.2d 684. In *Raber*, the court concluded that the trial court, in the context of an adult prosecution, lacked the authority to reopen a final judgment for the purposes of sex-offender classification one year after sentencing. *Id.* at ¶ 27. But there, the controlling statute, R.C. 2950.03(A)(2), expressly required that the judge provide notice to the offender at the time of sentencing that he would be subject to a duty to register. Here, however, the statute permitted the judge to hold a classification hearing when D.S. was released from a secure facility. Thus, the classification hearing at issue here is quite different from that at issue in *Raber* and does not constitute a "reopening" of the underlying judgments of delinquency and disposition.

{¶ 20} Significantly, D.S. was not exposed to the consequences of juvenile-offender-registrant status before the court determined that he was age-eligible for that designation. We are cognizant of the serious consequences that attach to registration and notification requirements for juvenile offenders. *See In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 45. But here, the

disposition order merely provided D.S. with notice of the deferred classification hearing and did not subject D.S. to registration and notification duties.

### Constitutional challenges

{¶ 21} Because we determine that the juvenile court here acted within its statutory authority, we must resolve D.S.'s constitutional challenges.

### Double jeopardy

{¶ 22} D.S. first asserts that classification at any time other than disposition violates the prohibition against double jeopardy under the United States and Ohio Constitutions.[2]

{¶ 23} The Double Jeopardy Clause of the Fifth Amendment applies to juvenile delinquency proceedings. *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 26, citing *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). Double-jeopardy concerns prohibit the imposition of multiple criminal punishments for the same offense in successive proceedings. *Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997); *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10 (noting that Article I, Section 10 of the Ohio Constitution also protects against double jeopardy). For both juveniles and adults, our cases hold that Ohio's sex-offender-classification scheme "imposes additional criminal punishment on those convicted of sexually oriented offenses." *Raber* at ¶ 23. An increased sentence is prohibited by the Double Jeopardy Clause when the defendant has a legitimate expectation of finality. *Id.* at ¶ 24. However, when a defendant is or should be aware at sentencing that the sentence may be increased, there is no legitimate expectation of finality to invoke a double-jeopardy concern. *See United States v. Husein*, 478 F.3d 318, 338 (6th Cir.2007), citing *United States v. Fogel*, 829 F.2d 77, 87 (D.C.Cir.1987).

---

[2] Although we concluded in *In re I.A.* that R.C. 2152.83(B) permits a classification hearing at disposition or upon the juvenile's release from a secure facility, no constitutional challenge was raised in that case. *In re I.A.*, 140 Ohio St.3d 203, 2014-Ohio-3155, 16 N.E.3d 653, at ¶ 18.

**{¶ 24}** We have held that the Double Jeopardy Clause barred the deferred sex-offender classification of an adult criminal defendant because registration and notification duties imposed criminal punishment and the defendant had a legitimate expectation of finality when the trial court entered its judgment of conviction and sentence. *Raber* at ¶ 23, 26-27. But, as we determined above, *Raber* is inapposite here. The defendant in *Raber* was classified under R.C. 2950.03(A)(2), which required notice *at sentencing* to the defendant of the duty to register. For a delinquent juvenile, however, R.C. 2950.03(A)(3) provides that notice of a duty to register must be given at the time specified in the applicable section of R.C. Chapter 2152, which permits classification upon the juvenile's release from a secure facility.

**{¶ 25}** Additionally, because Raber had a legitimate expectation of finality when the trial court entered its judgment of conviction, the Double Jeopardy Clause prohibited the trial court from conducting a sex-offender-classification hearing. But D.S.'s disposition order expressly stated that classification was deferred until his release, which provided D.S. with notice at disposition that a classification hearing would occur in the future and that registration and notification requirements could be imposed at that time. Thus, D.S. had no legitimate expectation of finality at disposition. Accordingly, we conclude that classification upon release from a secure facility as permitted under R.C. 2152.83 does not violate the prohibition against double jeopardy.

**{¶ 26}** As we noted in *I.A.*, the timing of a classification hearing may assist in the child's rehabilitation. 140 Ohio St.3d 203, 2014-Ohio-3155, 16 N.E.3d 653, at ¶ 16. Similarly, notice to a juvenile offender that he may be classified as a sex offender after commitment may provide motivation to successfully complete treatment. Thus, deferred classification of the juvenile offender is consistent with the juvenile court's exercise of its discretion in its rehabilitative role and with the statutory scheme.

*Due process*

**{¶ 27}** R.C. 2950.07(B) identifies the duration of time for a juvenile-sex-offender registrant's compliance with a duty to register. However, this time period is not abridged or terminated by the juvenile attaining 18 or 21 years of age. R.C. 2152.82(C) and 2152.83(E). D.S. asserts that the ongoing duty to register imposes a punitive sanction beyond the age jurisdiction of the juvenile court in violation of his due-process rights.

**{¶ 28}** Due-process rights are applicable to juveniles through the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution. *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 79, citing *In re Gault*, 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, at ¶ 70. What process is due depends on considerations of fundamental fairness in a particular situation. *C.S.* at ¶ 80; *C.P.* at ¶ 71.

**{¶ 29}** In *State v. D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, we overruled a due-process challenge to the imposition of a "blended sentence" for a serious-youthful-offender disposition. A blended sentence consists of a traditional juvenile disposition along with a stayed adult sentence that the court may enforce if the juvenile commits further bad acts. *Id.* at ¶ 2. We held that due process was not violated when the juvenile court judge, not a jury, considered certain facts under the statute in the exercise of his or her discretion to impose the blended sentence. *Id.* at ¶ 61.

**{¶ 30}** But in *C.P.*, we held that due process was violated by the automatic imposition of a Tier III sex-offender classification under R.C. 2152.86 with lifetime registration and notification requirements on juveniles adjudicated serious youthful offenders. *C.P.* at ¶ 86. Automatic classification "undercuts the rehabilitative purpose of Ohio's juvenile system and eliminates the important role of the juvenile

court's discretion in the disposition of juvenile offenders." *Id.* at ¶ 85. We explained:

> Once the juvenile court makes its [serious-youthful-offender] determination, the juvenile judge never gets an opportunity to determine whether the juvenile offender has responded to rehabilitation or whether he remains a threat to society. Even if the adult portion of his sentence is not invoked, the sex-offender classification is irrevocable. The timing of the classification—immediately upon the imposition of [serious-youthful-offender] status—leaves no room for the judge to determine whether the juvenile offender has been rehabilitated. And the automatically imposed punishment lasts far longer than the jurisdiction of the juvenile court.

*Id.* at ¶ 83. Thus, "fundamental fairness to the child demands the unique expertise of a juvenile judge." *Id.* at ¶ 76. In *C.P.*, the automatic imposition of the classification eliminated "th[e] essential element of the juvenile process"—the judge's discretion. *Id.* at ¶ 77.

{¶ 31} In contrast, the blended-sentence scheme in *D.H.* required the exercise of discretion by the juvenile court judge after a hearing and an opportunity to consider the statutory factors for such a sentence. *C.P.* at ¶ 79-81. The blended-sentence scheme also included procedural protections such as an opportunity for the court to modify the sentence. *Id.* at ¶ 81-83.

{¶ 32} In comparing the imposition of registration and notification here with the sentencing schemes at issue in *C.P.* and *D.H.*, we conclude that the punishment imposed on D.S. is distinguishable from the automatic and lifetime classification that we determined violated due process in *C.P.* It is more analogous

to the blended sentence in *D.H.* because the imposition of registration and notification requirements includes procedural protections that comport with the rehabilitative purpose of the juvenile system.

**{¶ 33}** For example, classification under R.C. 2152.83(B) is discretionary and may be imposed only after a hearing during which the juvenile court judge must consider "all relevant factors," including, but not limited to, the specific factors set forth in R.C. 2152.83(D). Determining which tier of classification applies to the juvenile offender also requires a hearing and the exercise of the court's discretion. R.C. 2152.82(B) and 2152.83(A)(2), (C)(1).

**{¶ 34}** Similarly, in *D.H.*, the juvenile court judge exercised discretion to determine the appropriate sentence. But in *C.P.*, the classification was automatic and statutorily prescribed for certain juvenile offenders. Thus, the offending aspect of the sentence was the inability of the juvenile court judge to exercise discretion in fashioning the disposition. When it comes to juvenile offenders facing penalties into adulthood, "[f]undamental fairness requires that the judge decide the appropriateness of any such penalty." *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, at ¶ 78.

**{¶ 35}** Additionally, classification here differs from that in *C.P.*, in which the offending classification scheme was irrevocable and precluded the juvenile court judge from having "an opportunity to determine whether the juvenile offender has responded to rehabilitation or whether he remains a threat to society." *C.P.* at ¶ 83. Under R.C. 2152.84(A)(1), when a child is classified as a juvenile-offender registrant before the completion of disposition for the sexually oriented offense, the juvenile court judge "shall conduct a hearing" upon the completion of the child's disposition "to determine whether the prior classification of the child as a juvenile offender registrant should be continued or terminated" or modified. R.C. 2152.84(A)(1). Thus, juvenile-offender-registrant status is subject to statutorily

prescribed review and can be modified or terminated at the discretion of the juvenile court.

{¶ 36} Even after the completion of disposition, the juvenile court maintains jurisdiction to periodically review the juvenile-offender's registrant status for purposes of termination or modification. Specifically, a juvenile-sex-offender registrant may petition the juvenile court, beginning at three years following the classification order, to request reclassification to a lower tier or to terminate the registration requirement altogether. R.C. 2152.85(A), (B). After the court has ruled on the initial petition, the statute permits additional opportunities for review, first after another three-year period, and then every five years thereafter. R.C. 2152.85(B). In determining whether to continue, modify, or terminate the classification, the juvenile court is directed to consider the statutory factors under R.C. 2152.83(D). R.C. 2152.85(C). Thus, the juvenile court judge maintains discretion throughout the course of the offender's registration period to consider whether to continue, terminate, or modify the juvenile's classification.

{¶ 37} The differences between the statutory scheme at issue here and the one in *C.P.* demonstrate that D.S.'s due-process rights are not offended. The imposition of juvenile-offender-registrant status under R.C. 2152.82 or 2152.83(B) with corresponding duties lasting beyond age 18 or 21 includes sufficient procedural protections to satisfy the due-process requirement of fundamental fairness. And, given the allowance for periodic review and modification, it is consistent with the rehabilitative purpose of the juvenile system.

CONCLUSION

{¶ 38} When, as here, a delinquent child disputes that he or she was at least 14 years old at the time the offenses were committed and age cannot be established from the undisputed allegations in the complaint, we conclude that the juvenile court must make a determination of age eligibility before or during the sex-offender-classification hearing and prior to subjecting the child offender to

registration and notification requirements under R.C. 2152.82 through 2152.86 and Chapter 2950.

**{¶ 39}** Additionally, we find no violation of the prohibition against double jeopardy when a sex-offender-classification hearing under R.C. 2152.83 is conducted upon a delinquent child's release from a secure facility.

**{¶ 40}** Finally, the imposition of juvenile-offender-registrant status under R.C. 2152.82 or 2152.83(B) with corresponding registration and notification requirements that continue beyond the offender's reaching age 18 or 21 does not violate the offender's due-process rights.

**{¶ 41}** Therefore, we affirm the judgment of the Fifth District Court of Appeals.

Judgment affirmed.

O'DONNELL, KENNEDY, and FRENCH, JJ., concur.

LANZINGER, J., dissents with an opinion in which PFEIFER and O'NEILL, JJ., concur.

_____

**LANZINGER, J., dissenting.**

**{¶ 42}** Because I would hold that the imposition of juvenile-offender-registrant status under R.C. 2152.82 or 2152.83(B) and the corresponding registration and notification requirements that continue beyond the offender's reaching the age of 21 violates the offender's due-process rights, I respectfully dissent.

**{¶ 43}** The complaint in this case charged D.S. with two counts of gross sexual imposition ("GSI"), which would be third-degree felonies if committed by an adult, and one count of public indecency, which would be a second-degree misdemeanor if committed by an adult. *See* R.C. 2907.05(C)(2) and 2907.09(C)(4). Each of the GSI counts alleged that when he was 13 or 14 years old, D.S. rubbed his penis on the buttocks of a child approximately eight or nine years old, touching

the skin of the child's buttocks. The complaint did not allege that any force or penetration occurred. D.S. admitted to and was found delinquent on the two GSI charges.

{¶ 44} As the majority explains in its analysis, the question whether the imposition of juvenile-offender-registrant status and the corresponding registration and notification requirements that continue beyond the age of 21 violates an offender's due-process rights must be decided in light of our decisions in *State v. D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, and *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729. But while the majority concludes that the nature of the registration at issue in this case is close to the blended sentence in *D.H.*, I believe that the due-process concerns triggered in this case are distinguishable from those raised in both *D.H.* and *C.P.*

{¶ 45} In *D.H.*, the juvenile court designated D.H. as a serious youthful offender ("SYO") and included in its disposition a discretionary adult sentence. *D.H.* at ¶ 9-11. The statute governing SYO sentences, R.C. 2152.13, carries a number of procedural protections, including the right to a grand jury determination of probable cause as well as an open and speedy trial by jury. R.C. 2152.13(C)(1). A juvenile detained while awaiting adjudication is entitled to the same right to bail as an adult charged with the offense alleged. R.C. 2152.13(C)(2). Further, the Criminal Rules and all other rights afforded to adult criminal defendants, including an unwaivable right to counsel and the right to raise the issue of competency, apply during the adjudicatory process of the juvenile's case. *Id.*

{¶ 46} In considering the blended sentencing of the SYO in *D.H.*, we emphasized the protections provided to the juvenile during the important adjudicative phase: "The jury plays an important role in the adjudicative portion of Ohio's serious-youthful-offender disposition statutory scheme. Only the jury's factual determination makes the juvenile defendant eligible for a disposition that might include a stayed adult sentence." *D.H.* at ¶ 58. We concluded that these

protections were not required to provide due process to D.H. when a blended sentence was imposed during the dispositional phase, stating that the "court's dispositional role is at the heart of the remaining differences between juvenile and adult courts." *Id.* at ¶ 59.

{¶ 47} In *C.P.*, we determined that the imposition of an automatic, lifetime requirement of sex-offender registration and notification undercuts the rehabilitative purpose of Ohio's juvenile system, eliminates the important role of the juvenile court's discretion in the disposition of juvenile offenders, and accordingly fails to meet the due-process requirement of fundamental fairness. *C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, at ¶ 85. C.P., like D.H., was designated an SYO, but we distinguished the case based on the fact that the mandatory classification required by R.C. 2152.86 removed the juvenile court's ability to exercise its important role in rehabilitation. *Id.* at ¶ 7, 75-78.

{¶ 48} As we explained in *C.P.*, "fundamental fairness is not a one-way street that allows only for an easing of due process for juveniles; instead, fundamental fairness may require, as it does in this case, additional procedural safeguards for juveniles in order to meet the juvenile system's goals of rehabilitation and reintegration into society." *Id.* at ¶ 85. These concerns are just as valid here.

{¶ 49} Our analysis in both *D.H.* and *C.P.* focused on the dispositional stage of the juvenile proceedings. There was no need for us to analyze whether the juveniles' rights to due process were satisfied during the adjudicative stage of the proceedings because both juveniles received an SYO designation and were entitled to heightened procedural protections under R.C. 2152.13. Although neither of those cases addressed the adjudicative stage of juvenile proceedings, I believe that the due-process requirement of fundamental fairness applies to the adjudicative stage of juvenile proceedings just as much as it applies to the dispositional stage. Because adequate procedural protections during the adjudicative stage were absent

in this case, I would hold that the imposition of registration and notification requirements beyond the traditional age jurisdiction of the juvenile court violates due process.

{¶ 50} We have established that following the enactment of 2007 Am.Sub.S.B. No. 10, it is clear that the registration process imposed on sex offenders in Ohio is punitive. *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 16; *C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, at ¶ 11. Requiring registration in cases like this imposes a sanction that extends well beyond the juvenile court's jurisdiction. In essence, adult punishment is imposed for acts the offender committed as a child. This runs counter to what we identified in *C.P.* as "the juvenile system's core emphasis on individual, corrective treatment and rehabilitation." *C.P.* at ¶ 77. We have also explained that within the juvenile system, punishment occurs only as a means of working toward rehabilitation:

> The legislative purpose regarding [juveniles] has been laid out in R.C. 2151.01: to provide for the care, protection, and mental and physical development of children, to protect the public from the wrongful acts committed by juvenile delinquents, and to rehabilitate errant children and bring them back to productive citizenship, or, as the statute states, to supervise, care for and rehabilitate those children. Punishment is not the goal of the juvenile system, except as necessary to direct the child toward the goal of rehabilitation.

*In re Caldwell*, 76 Ohio St.3d 156, 157, 666 N.E.2d 1367 (1996).

{¶ 51} D.S. admitted to and was found delinquent for having sexual contact at the age of 13 or 14 with a child five years younger than he was. It was never alleged that his actions involved compulsion, force, or impairment of the younger

child.  For these two acts, D.S. was committed to institutionalization with the Ohio Department of Youth Services ("DYS") for at least one year.  After he was deemed fit for release, the court classified him as a juvenile sex-offender registrant for a period of 20 years.  Although the juvenile court retains discretion throughout the course of the registration period to consider termination or modification of the classification, it cannot be said that requiring individuals in D.S.'s position to comply with registration requirements until they are 37 years old functions to provide for the care, protection, and mental and physical development of children or to direct children toward the goal of rehabilitation.

{¶ 52} Unlike the DYS commitment, which is tailored toward rehabilitation and lasts only until juvenile offenders reach the age of 21, the classification and accompanying obligations imposed beyond the age of 21 can only be viewed as adult punishment.  Because this is adult punishment, the adjudicative process must include sufficient procedural protections to satisfy the due-process requirement of fundamental fairness.  At minimum, those procedural protections include the rights set forth in R.C. 2152.13 that provide adequate procedural protections to juveniles facing an SYO designation.  Because these procedural protections, including the right to a jury trial and the right to application of the Criminal Rules, are lacking in this case, the imposition of registration and notification requirements beyond the traditional age jurisdiction of the juvenile court violates D.S.'s due-process rights.

{¶ 53} The statutory scheme here risks becoming what the Supreme Court of the United States has deemed "the worst of both worlds," in which the child receives "neither the protections accorded to adults nor the solicitous care and regenerative treatment postulated for children."  *Kent v. United States*, 383 U.S. 541, 556, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).  I would hold that the juvenile court's imposition of registration and notification requirements beyond the age of 21 violates D.S.'s right to due process, and I would accordingly reverse the judgment of the court of appeals.

PFEIFER and O'NEILL, JJ., concur in the foregoing opinion.

_____

Timothy Young, Ohio Public Defender, and Brooke M. Burns, Assistant Public Defender, for appellant.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Michael J. Hendershot, Chief Deputy Solicitor, and Jeffrey Jarosch, Deputy Solicitor; and Kenneth W. Oswalt, Licking County Prosecutor, and Lia J. Meehan, Assistant Prosecuting Attorney, for appellee.

Marsha Levick, urging reversal for amici curiae Juvenile Law Center, Children's Law Center, Inc., Dr. Elizabeth J. Letourneau, National Juvenile Defender Center, Nicole Pittman, Schubert Center for Child Studies, and The Association for the Treatment of Sexual Abusers.

_____