[Cite as *State v. Amos*, 2017-Ohio-8448.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-160717 |
| | | C-160718 |
| Plaintiff-Appellant, | : | TRIAL NOS. B-1503921 |
| | | B-1402018 |
| vs. | : | |
| RONALD AMOS, | : | *O P I N I O N.* |
| Defendant-Appellee. | : | |

Criminal Appeals From:  Hamilton County Court of Common Pleas

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal:  November 8, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams,* Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Raymond T. Faller*, Hamilton County Public Defender, and *Julie Kahrs Nessler*, Assistant Public Defender, for Defendant-Appellee.

**CUNNINGHAM, Presiding Judge.**

### *Facts and Procedure*

### *1. The Juvenile Case*

{¶1} On January 26, 2010, defendant-appellee Ronald Amos was adjudicated delinquent for committing an act which, had it been committed by an adult, would have constituted the offense of rape. Amos was subsequently committed to the Department of Youth Services ("DYS"). On March 30, 2011, he was released from DYS, placed on "parole,"[1] and, by agreement, classified as a Tier I juvenile-offender registrant. The court's entry stated, "Upon completion of the dispositions that were made for the sexually oriented offense upon which the order is based, a hearing will be conducted, and the order and any determinations included in the order are subject to modification or termination pursuant to ORC 2152.84 and ORC 2152.85." Amos was discharged from parole on June 24, 2013. On July 2, 2014, in the absence of Amos, the juvenile court held a "completion of disposition hearing," and ordered that the "Prior order of 3/30/2011 determining defendant to be a Tier I registrant remains in effect."

### *2. Appeal No. C-160717*

{¶2} On July 27, 2015, in the case numbered B-1503921, Amos was indicted for failing to notify the sheriff of an address change. Amos filed a motion to dismiss the indictment, arguing that he had no duty to register as a sex offender under R.C. Chapter 2950 because the juvenile court had no authority to classify him over a year after his juvenile disposition had been completed and his parole terminated. The common pleas court agreed and

---

[1] We are cognizant that the juvenile statutes no longer refer to parole and probation, but we are using the term parole because that is the term the trial court used.

dismissed the indictment, holding that the juvenile court had no authority to conduct an untimely completion-of-disposition hearing, and therefore, the juvenile court's July 2, 2014 order classifying Amos as a Tier I sex offender was void and Amos had no duty to register as a sex offender. The state has appealed from the common pleas court's judgment in the appeal numbered C-160717.

### 3. Appeal No. C-160718

{¶3}   After the trial court entered its order in the case numbered B-1503921 finding that Amos had no duty to register as a sex offender, Amos filed a motion to withdraw his plea and dismiss the indictment in the case numbered B-1402018. In that case, Amos had pleaded guilty to failing to provide notice of an address change. The common pleas court granted Amos's motion to withdraw his plea and dismissed the indictment. The state has appealed the court's judgment in the appeal numbered C-160718. The appeals have been consolidated.

### Analysis

{¶4}   The state's first assignment of error alleges that the trial court erred in dismissing the indictment in the case numbered B-1503921.

{¶5}   The state first argues that a motion to dismiss the indictment was not the appropriate vehicle to challenge Amos's duty to register. In *State v. Palmer*, 131 Ohio St.3d 278, 2012-Ohio-580, 964 N.E.2d 406, ¶ 23, the Ohio Supreme Court stated, "Under Crim.R. 12(C)(2), trial courts may judge before trial whether an indictment is defective. Without a doubt, an indictment is defective if it alleges violations of R.C. Chapter 2950 by a person who is not subject to that chapter. There is no set of circumstances under which such a person can violate the law's requirements." The court went on

3

to say that "such a determination does not embrace the general issue for trial," and that the trial court is "well within its authority" to dismiss an indictment "where the law simply does not apply." *Id.* at ¶ 24. Therefore, Amos's motion to dismiss the indictment was the proper vehicle to challenge whether he had a duty to register under R.C. Chapter 2950.

{¶6} We now turn to the issue of whether Amos had a duty to register. R.C. 2152.83(A)(1) provides that the juvenile court shall issue at the time of disposition or, "if the court commits the child for the delinquent act to the custody of a secure facility, shall issue at the time of the child's release from the secure facility," an order classifying the child as a juvenile-offender registrant. R.C. 2152.84(A)(1) provides that when a juvenile court issues an order under R.C. 2152.83 classifying the juvenile as a juvenile-offender registrant, "upon completion of the disposition of that child made for the sexually oriented offense or the child-victim oriented offense on which the juvenile offender registrant order was based, the judge * * * shall conduct a hearing to review the effectiveness of the disposition * * * to determine whether the prior classification" should be continued, terminated, or modified. Both R.C. 2152.83(A)(1) and 2152.84(A)(1) refer to when each classification hearing must be held in mandatory terms, stating that the juvenile court *shall* hold an initial hearing at the time of disposition or at the time of the juvenile's release from a secure facility, and that the court *shall* hold a second hearing upon the completion of disposition.

{¶7} In *In re Antwon C.*, 182 Ohio App.3d 237, 2009-Ohio-2567, 912 N.E.2d 182, ¶ 20 (1st Dist.), we stated,

Juvenile [offender registrants] are afforded two classification hearings. First, under R.C. 2152.83, a juvenile is afforded a

4

tier-classification hearing either as part of the child's disposition or, if the child is committed to a secure facility, when the child is released. Second, under R.C. 2152.84, when a child completes all aspects of the disposition, including probation and any ordered treatment, the trial court "shall conduct a hearing" to consider the risk of reoffending so that the trial court can determine whether the order to register as a sex offender should be continued or terminated. Further, at the reclassification hearing, the trial court must determine whether the specific tier classification in which the child has been placed is proper and if it should be continued or modified.

{¶8} We held in *State v. Schulze*, 2016-Ohio-470, 59 N.E.3d 673 (1st Dist.), that where the juvenile court had correctly held the initial classification hearing under Megan's Law, but had erroneously held the completion-of-disposition hearing under the Adam Walsh Act, the order entered after the second hearing classifying Schulze under the Adam Walsh Act was void, and there was no valid order in place requiring Schulze to register as a sex offender. We noted that the juvenile court had never properly completed the required process for classifying Schulze as a juvenile-offender registrant, and we held that the initial classification order was not "revived or still in effect," and that Schulze could not be required to register under it. We stated,

> The end-of-disposition hearing under former R.C. 2152.84 was statutorily mandatory. The original classification was entered subject to modification or termination after the former R.C. 2152.84 hearing. *See* former R.C. 2152.83(F). The juvenile was entitled to have an end-of-disposition hearing to determine his

5

classification going forward. *See* former R.C. 2152.84. Every juvenile classified after a former R.C. 2152.83(B)(2) hearing was to receive a hearing at the end of his or her disposition to determine if the classification continued to be appropriate. In order to complete the process of classifying a juvenile as a sex-offender registrant, the juvenile court was required to hold an end-of-disposition hearing. *See id.*

*Schulze* at ¶ 8.

{¶9}    In the instant case, on March 30, 2011, after Amos was released from DYS, a secure facility, he was placed on parole and classified as a Tier I juvenile-offender registrant. When Amos was discharged from parole on June 24, 2013, he had "completed all aspects of the disposition" for his sexually-oriented offense. *See In re H.P.*, 9th Dist. Summit No. 24236, 2008-Ohio-5848 ("Not until the juvenile has successfully completed the terms of his parole would he reach the 'completion of the disposition' and be subject to hearing on the redetermination of classification" under R.C. 2152.84.). At that time, the juvenile court should have held a completion-of-disposition hearing under R.C. 2152.84. *See id.*; *see also In re I.A.*, 140 Ohio St.3d 203, 2014-Ohio-3155, 16 N.E.3d 653 (stating that pursuant to R.C. 2152.84(A), any child classified as a juvenile-offender registrant under R.C. 2152.83(B) receives a mandatory hearing at the completion of the juvenile's disposition regarding whether the classification continues to be appropriate). The juvenile court did not hold a completion-of-disposition hearing until July 2, 2014, more than a year after Amos had completed the disposition for his sexually-oriented offense.

{¶10} The Ohio Supreme Court held in *State ex rel. Jean-Baptiste v. Kirsch*, 134 Ohio St.3d 421, 2012-Ohio-5697, 983 N.E.2d 302, that the juvenile court lacked statutory authority to conduct an initial juvenile-offender-registration hearing after the juvenile had fully satisfied the court's delinquency adjudication and had turned 21. On the day he turned 18 years old, Jean-Baptiste was adjudicated delinquent for committing an act that, had it been committed by an adult, would have constituted the crime of rape. He was committed to the custody of DYS for a minimum of one year and a maximum period not to exceed his 21st birthday. He was also classified as a sexual predator and ordered to register as a sex offender. The sexual-predator classification was vacated on appeal. DYS notified the juvenile judge that Jean-Baptiste would be released on January 18, 2010, his 21st birthday. The juvenile judge ordered that a juvenile-offender-classification hearing be held on February 8, 2010. Jean-Baptiste filed a complaint for a writ of prohibition to prevent the juvenile court from proceeding with the classification hearing.

{¶11} The Supreme Court granted the writ of prohibition, holding that the juvenile court "patently and unambiguously" lacked jurisdiction to classify Jean-Baptiste. The court noted that "Jean-Baptiste's first proposition of law includes the argument that a court lacks jurisdiction to classify a child once the disposition has been fully satisfied." The court held that R.C. 2152.83 specified that the classification must occur when the child is released from a secure facility, and the juvenile court had no jurisdiction to classify Jean-Baptiste after that time. The court stated,

> R.C. 2152.83(A)(1) requires that the court issue an order classifying the child as a juvenile-offender registrant at the time

7

of the child's release from the custody of a secure facility. Because the juvenile court lacks statutory authority to classify Jean-Baptiste after he was released and the court's delinquency adjudication has been fully satisfied, we agree with Jean-Baptiste's first proposition of law as applied to this case and hold that the juvenile court lacks jurisdiction to classify Jean-Baptiste who is now no longer a "child" under the applicable statute.

*Id.* at ¶ 32.

{¶12} The Supreme Court noted that its decision in *Jean-Baptiste* was "in accord" with its decision in *In re Cross*, 96 Ohio St.3d 328, 2002-Ohio-4183, 774 N.E.2d 258, and that the "reasoning behind *Cross* also applies to Jean-Baptiste's case." *Jean-Baptiste* at ¶ 30. In *Cross*, the court held that the juvenile court had no jurisdiction to reimpose a suspended commitment to a DYS facility after the juvenile had been released from probation, because "the completion of probation signals the end of the court's jurisdiction over a delinquent juvenile." *Cross* at ¶ 28. "When the court ended Cross's probation, it ended its ability to make further dispositions as to Cross on that delinquency count." *Id.*

{¶13} In *In re B.H.*, 5th Dist. Licking No. 17 CA 0005, 2017-Ohio-6966, B.H. admitted to two counts of gross sexual imposition. The juvenile court suspended a commitment to DYS "pending [B.H.'s] performance on community control." Subsequently, the juvenile court held a "non-oral hearing" at which it determined that "the issue of sex offender classification should have been addressed at the dispositional hearing," and "ordered that a new dispositional hearing be scheduled." On January 8, 2008, the juvenile

court designated B.H. a Tier II offender. On July 13, 2011, the Ohio Supreme Court decided *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, holding that the Adam Walsh Act could not be applied to offenders who, like B.H., had committed their offenses before its enactment. On January 9, 2012, B.H. was released from probation. On September 6, 2016, the juvenile court ordered that B.H. was "automatically" subject to registration under Megan's Law. Relying on *Jean-Baptiste* and *Cross*, the Fifth Appellate District held that the classification was void, because the juvenile court had no jurisdiction to classify B.H. after he had been discharged from probation. *B.H.* at ¶ 37. The Fifth District stated,

> [W]e find that B.H. successfully completed his disposition of January 9, 2012, when he was discharged from probation. Accordingly, the juvenile court had no jurisdiction to impose a new classification after that date. * * * [W]e find that the juvenile court did not have jurisdiction over B.H., and the juvenile court acted outside its jurisdiction in imposing the new classification.

*Id.*

{¶14} The juvenile court loses its jurisdiction over a juvenile who has completed his parole or community control and has been discharged by the court. Because the juvenile court did not hold a hearing before Amos was discharged from parole, completing his disposition for his sexually-oriented offense, the juvenile court did not properly complete the statutorily-required process for classifying him as a juvenile-offender registrant, and thus, it had no authority to classify Amos as a Tier I offender. Therefore, Amos has no duty to register as a sex offender under R.C. Chapter 2950.

9

{¶**15**} The dissent cites *In re D.S.*, 146 Ohio St.3d 182, 2016-Ohio-1027, 54 N.E.3d 1184, for the proposition that once the juvenile court makes an initial appropriate classification under R.C. 2152.83, it is permanently vested with jurisdiction to review the classification in accordance with R.C. 2152.84 and 2152.85. The Supreme Court held in that case, which involved an initial classification, that (1) the determination whether the juvenile is age-eligible for juvenile-offender registration must be made before or during the initial sex-offender-classification hearing, (2) holding an initial classification hearing under R.C. 2152.83 when the juvenile is released from a secure facility does not violate double jeopardy, and (3) it is not a due-process violation to impose upon the juvenile registration and notification requirements that extend beyond age 18 or 21. But *In re D.S.* did not address the issue before this court as to the effect of the juvenile court discharging the juvenile before properly completing the process mandated by statute for validly classifying the juvenile as a juvenile-offender registrant. Therefore, *In re D.S.* is distinguishable. Moreover, the dissent ignores *Jean-Baptiste* and *In re Cross*, which stand for the proposition that the juvenile court loses jurisdiction over the juvenile after it releases him.

{¶**16**} Because the trial court properly dismissed the indictment in the case numbered B-1503921, we overrule the first assignment of error.

{¶**17**} The state's second assignment of error alleges that the trial court erred in granting Amos's motion to withdraw his plea and dismissing the indictment in the case numbered B-1402018.

{¶**18**} In *State v. Ferguson*, 1st Dist. Hamilton No. C-140368, 2015-Ohio-1463, ¶ 7, quoting *State v. Shirley*, 1st Dist. Hamilton No. C-130121, 2013-Ohio-5216, ¶ 8, we stated,

Crim.R. 32.1 provides that a trial court may permit a defendant to withdraw a guilty plea after sentence "to correct manifest injustice." Crim.R. 32.1; *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus; *State v. Akemon*, 173 Ohio App.3d 709, 2007-Ohio-6217, 880 N.E.2d 143, ¶ 8 (1st Dist.). "A manifest injustice has been defined as a 'clear or openly unjust act,' evidenced by an extraordinary and fundamental flaw in a plea proceeding." *State v. Tekulve,* 188 Ohio App.3d 792, 2010-Ohio-3604, 936 N.E.2d 1030, ¶ 7 (1st Dist.), citing *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998), and *Smith* at 264.

{¶19} It is clear that Amos does not have a duty to register as a sexual offender and thus could not have been convicted of violating that duty. Therefore, he could not have knowingly, intelligently or voluntarily pleaded guilty to failing to notify of an address change. *See State v. King*, 2015-Ohio-3565, 41 N.E.3d 847, ¶ 11 (1st Dist.). We hold that Amos demonstrated manifest injustice, and therefore, the trial court did not err in permitting him to withdraw his guilty plea. *Id.* Further, because Amos has no duty to register as a sex offender, the court did not err in dismissing the indictment charging Amos with failing to notify of an address change. The state's second assignment of error is overruled.

{¶20} The judgments of the trial court are affirmed.

*Judgments affirmed.*

**DETERS, J.**, concurs.
**MILLER, J.**, dissents.

11

**MILLER, J.**, dissenting.

{¶21} The majority mistakenly relies, in large part, on precedent governing the jurisdictional time limits of a juvenile court to hold an *initial* classification hearing to conclude that the juvenile court lost jurisdiction to conduct a *review* hearing. I would hold that once a juvenile court makes an appropriate classification under R.C. 2152.83, it is permanently vested with jurisdiction to review the classification in accordance with R.C. 2152.84 and 2152.85. *See In re D.S.*, 146 Ohio St.3d 182, 2016-Ohio-1027, 54 N.E.3d 1184, ¶ 36. Accordingly, I would reverse the judgments of the trial court. I respectfully dissent.

{¶22} An initial classification made under R.C. 2152.83 "shall remain in effect for the period of time specified in section 2950.07[ ], subject to a modification or termination of the order under section 2152.84 * * *." R.C. 2152.83(E). Under R.C. 2950.07, Amos's Tier I classification lasts for ten years. R.C. 2950.07(B)(3). Amos was classified in 2011. Thus, his registration obligations under his initial classification run until 2021. As discussed by the majority, R.C. 2152.84 affords a juvenile offender registrant a mandatory review hearing "upon completion of the disposition." R.C. 2152.84(A)(1). Under a plain reading of these statutes, Amos's initial classification will last for ten years unless modified or terminated by the juvenile court, and the juvenile court is required to review the classification at the end of the disposition.

{¶23} Nothing in these statutes can be read to automatically terminate the classification if the review hearing does not occur timely. Rather, Amos's classification shall last for ten years unless affirmatively modified or terminated by the juvenile court.

**{¶24}** The classification scheme vests the juvenile court with continuing jurisdiction once an initial classification has been made. "Thus, juvenile-offender-registrant status is subject to statutorily prescribed review and can be modified or terminated at the discretion of the juvenile court." *In re D.S.* at ¶ 35. "The child's attainment of eighteen or twenty-one years of age does not affect or terminate the order, and the order remains in effect for the period of time described in this division." R.C. 2152.83(E) and 2152.84(D). Moreover, a juvenile-offender registrant may petition the juvenile court for additional review hearings after three years, six years, eleven years, and every five years thereafter. R.C. 2152.85(B)(1). "*Even after the completion of disposition*, the juvenile court maintains jurisdiction to periodically review the juvenile-offender's registrant status for purposes of termination or modification." (Emphasis added.) *In re D.S.* at ¶ 36. "Thus, the juvenile court judge maintains discretion throughout the course of the offender's registration period to consider whether to continue, terminate, or modify the juvenile's classification." *Id.* The Revised Code and the Supreme Court are clear: once the initial classification is made, jurisdiction is vested with the juvenile court to review the classification postdisposition.

**{¶25}** The majority holding that "the juvenile court loses its jurisdiction over a juvenile who has completed his parole or probation" is untrue for review hearings. With the exception of *Schulze*, the cases relied upon by the majority—*In re Cross, Jean-Baptiste* and *In re B.H.*—address jurisdiction for *initial* classifications. They are not instructive. And *Schulze* was not about jurisdiction. Instead, *Schulze* concluded that where the juvenile court had improperly applied the Adam Walsh Act ("AWA") instead of Megan's Law, the postdispostion order classifying the defendant as a sex offender was void. *Schulze*, 2016-Ohio-470, 59 N.E.3d 673, at ¶ 9-10.

13

{¶26} The most relevant aspect of *Schulze* is its reliance on *In re E.S.,* 1st Dist. Hamilton Nos. C-110163 and C-110490, 2012-Ohio-1363. *Id.* at ¶ 9, citing *E.S.* at ¶ 8. In *E.S.,* we held that, where a trial court had improperly conducted an end-of-disposition hearing under the AWA, the remedy on direct appeal from the classification was to reverse and remand the case for a new hearing under Megan's Law—over a year and three months after E.S.'s end-of-disposition hearing under the AWA had occurred. *E.S.* at ¶ 1, 8. *E.S.* implicitly recognized that a juvenile court does not lose jurisdiction over a registrant at the end of dispostion.

{¶27} In this case, I would not find that, as a matter of law, the timing of the review hearing deprived the juvenile court of jurisdiction. We should apply the Supreme Court pronouncement in *In re D.S.* to conclude that the juvenile court was not patently without jurisdiction to hold the R.C. 2152.84 review hearing after the completion of Amos's disposition.

{¶28} While Amos may be correct that a juvenile court that waits more than 12 months after the completion of disposition to hold a review hearing is out of compliance with the statutory mandate that the review occur "upon completion of the disposition," that question needn't be answered today because terminating the classification isn't the proper remedy. Amos's remedy was to enforce his right to a review hearing by petitioning the juvenile court to conduct the hearing sooner, or filing an original action with this court or the Supreme Court to compel the juvenile court to perform its duties. At the very least, if Amos thought the review hearing was conducted out of time, he should have appealed from the notice Amos and his parents were provided of the result of the review hearing. *See* R.C. 2152.84(C). Amos has not articulated any specific harm in the delay. And none of this impacts the jurisdiction of the juvenile court to conduct the review hearing.

14

{¶29}   Because the juvenile court had jurisdiction, the trial court could not conclude that "the law simply does not apply."  Thus, the trial court erred in dismissing the indictment in the case numbered B-1503921 and in granting Amos's motion to withdraw his plea and dismissing the indictment in the case numbered B-1402018.  *See State v. Palmer*, 131 Ohio St.3d 278, 2012-Ohio-580, 946 N.E.2d 406.

Please note:

The court has recorded its own entry this date.