[Cite as *In re L.N.*, 2018-Ohio-3982.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY


In re L.N.                                   Court of Appeals No. WD-16-043

                                             Trial Court No. 2014JA0881


                                             **DECISION AND JUDGMENT**

                                             Decided: September 28, 2018

* * * * *

Timothy Young, Ohio Public Defender, and Victoria Bader,
Assistant State Public Defender, for appellant.

Paul A. Dobson, Wood County Prosecuting Attorney, and
Charles Bergman, Chief Assistant Prosecuting Attorney, and
David Harold, Assistant Prosecuting Attorney, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} In this re-opened appeal, the appellant, "L.N.," challenges a judgment by the

Wood County Court of Common Pleas, Juvenile Division, that classified him as a

juvenile sex offense registrant.  For the reasons set forth below, we reverse and vacate the decision of the lower court.

**Facts and Procedural History**

{¶ 2} On September 19, 2014, a complaint was filed with the Wood County Juvenile Court, alleging that L.N., then 15 years old, had unlawful sexual contact with his four-year-old sister.  On October 29, 2014, the court adjudicated L.N. delinquent to the offense of gross sexual imposition, in violation of R.C. 2907.05(A)(4), a third-degree felony delinquency.  (Hereinafter "the 2014 GSI case.")  The court then proceeded to the dispositional phase and ordered that L.N. be committed to the legal custody of the Ohio Department of Youth Services ("DYS") for institutionalization in a secure facility for a minimum of six months and for a maximum period not to extend beyond L.N.'s 21st birthday.  The court immediately suspended its commitment order, on the condition that L.N. complete treatment at the Juvenile Residential Center of Northwest Ohio ("JRC").  It deferred the matter of whether to classify L.N. as a juvenile offender registrant "upon [L.N.'s] release from [JRC]."

{¶ 3} On April 7, 2015, while still receiving treatment at JRC, L.N. was charged in a separate case of gross sexual imposition.  (Hereinafter "the 2015 GSI case").  That case alleged misconduct that occurred when L.N. was 13 years old and involved a different victim than the 2014 GSI case.

{¶ 4} On June 18, 2015, the juvenile court held a hearing on several matters:  the 2014 and 2015 GSI cases and two other complaints in delinquency that alleged probation

2.

violations by L.N. (assault and property damage) that occurred while L.N. was placed at JRC. With respect to the instant case, i.e., the 2014 GSI case, the court ordered,

Probation is terminated. The previous order of placement at the Juvenile Residential Center of Northwest Ohio is termianted [sic]. The court shall be notified prior to [L.N.'s] release from DYS in order for a sexual classification hearing to be held (in this case). (Judgment Entry, June 23, 2015).

{¶ 5} According to the June 18, 2015 hearing transcript, the court also expressed its intention to order, by separate entry, L.N. committed to DYS in the 2015 GSI case for a minimum period of 6 months to L.N.'s 21st birthday. In other words, the court terminated L.N.'s probation and placement in the instant case (the 2014 GSI case) and ordered that L.N. be committed to DYS in the 2015 GSI case.

{¶ 6} In advance of L.N.'s scheduled release from DYS on August 4, 2016, the juvenile court held a juvenile sex offense registrant hearing on July 18, 2016, during which it received evidence and heard arguments from both sides regarding whether, and at what tier level, to classify L.N. The hearing reconvened on August 4, 2016, and by order of that date, the court determined that L.N. should be classified a Tier II juvenile sex offense registrant, requiring him to register as a sex offender and verify his address every 180 days for a period of 20 years. In its decision, the court noted the following factors: L.N., at the age of 15, had sexual contact with his four-year-old sister "on multiple occasions"; L.N. admitted to "molesting four young girls under the age of

3.

eleven; L.N. had only "[j]ust recently" demonstrated "a significant amount of remorse and guilt" whereas previous reports suggested that L.N. showed "little to no remorse"; L.N. was determined to be at a high risk of re-offending; he had been diagnosed with several psychological disorders; and, while placed at DYS, L.N. "had a number of behavioral incidents involving violence and threats of violence." The court also granted temporary custody of L.N. to the Wood County Department of Job and Family Services, noting that L.N. could not return to the home of either parent, as he had victimized siblings at both homes.

{¶ 7} L.N. appealed. He alleged that the juvenile court committed plain error in holding a sex offender registration hearing after his June 18, 2015 release from JRC, in violation of R.C. 2152.83(B)(1). In our decision, we found that "[b]ecause L.N. did not request the transcript in his praecipe or otherwise provide this court with a transcript of the juvenile court's proceedings, * * * we must presume that the court's rulings, with respect to his assignment of error, were correct. *In re L.N.*, 6th Dist. Wood No. WD-16-043, 2017-Ohio-4471, ¶ 22 ("*In re L.N. I*"), citing *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1989).

{¶ 8} Pursuant to App.R. 26(B), the Ohio Public Defender filed an application to reopen L.N.'s appeal. It argued that L.N. had received ineffective assistance of appellate counsel for counsel's failure to order the record for our review. We agreed, and found that "the absence of the record was prejudicial to L.N. inasmuch as it precluded our review of the merits of his assignment of error. Accordingly, we found that there is a

4.

genuine issue as to whether, if the transcript of proceedings had been available for this court's review, L.N. would have had a reasonable probability of successfully demonstrating that the juvenile court erred in holding the classification hearing when it did." *In re. L.N. I* at ¶ 14, citing App.R. 26(B) and *Strickland v. Washington*, 466 U.S. 668, 104, S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 9} The matter was then fully briefed and argued. L.N. raises the following assignments of error:

> **Assignment of Error I:** The Wood County Juvenile Court erred when it classified L.N. as a juvenile sex offender registrant after all dispositional orders were terminated. Fourteenth Amendment to the United States Constitution; Ohio Constitution, Article I, Section 16 (A-1; 6/18/15 T.pp.9-11; 6/23/15 Judgment Entry; 8/4/16 T.pp.3-19).

> **Assignment of Error II:** The juvenile court committed plain error by conducting a juvenile sex offender classification and registration hearing and classifying the juvenile as a Tier II sexual offender registrant, as the juvenile had been released from the secure facility to which he was confined as part of his original disposition more than a year before his classification hearing. (6/18/15 T.pp.9-11; 6/23/15 Judgment Entry; 8/4/16 T.pp.3-19; A-1).

5.

{¶ 10} We begin with L.N.'s second assignment of error in which he argues that the juvenile court committed plain error when it conducted a juvenile sex offender registration hearing in contravention of the time frames established by R.C. 2152.83(B). As he acknowledges, because no objection was raised at the trial level regarding the timeliness of the classification hearing, our review is limited to a plain error analysis. Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error review is available in juvenile delinquency proceedings. *See, e.g., In re Tabler*, 4th Dist. Lawrence No. 06CA30, 2007-Ohio-411, ¶ 15. An appellate court will take notice of plain error with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. Before we reverse the trial court for plain error, we must find that the error is clearly apparent from the face of the record and is prejudicial to the appellant. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 16.

{¶ 11} "The statute that controls the procedure for juvenile sex-offender classification is R.C. 2152.83." *State ex rel. Jean-Baptiste v. Kirsch*, 134 Ohio St.3d 421, 2012-Ohio-5697, 983 N.E.2d 302, ¶ 25. Specifically, "R.C. 2152.83(B) sets forth the juvenile-offender-registration-classification procedure for 14- or 15-year-old juveniles who are judged delinquent for committing a sexually oriented offense or a child-victim-oriented offense and who are not subject to R.C. 2152.82 (repeat-offender) or R.C.

6.

2152.86 (serious youthful offender)." [1] *In re I.A.*, 140 Ohio St.3d 203, 2014-Ohio-3155, 16 N.E.3d 653, ¶ 6. The court "may" impose classification under R.C. 2152.83(B) only after it conducts a hearing to consider certain statutory factors and determine whether the child should be labeled a juvenile offender registrant. R.C. 2152.83(B)(2). "If the judge determines that it is appropriate to impose juvenile-offender-registrant status, the judge must conduct a tier-classification hearing to determine whether the child should be classified as a Tier I, II, or III sex offender. R.C. 2152.83(C) and 2152.831." *In re. D.S.*, 146 Ohio St.3d 182, 2016-Ohio-1027, 54 N.E.3d 1184, ¶ 14.

{¶ 12} R.C. 2152.83(B)(1) governs the timing of classification hearings. It provides,

> The court that adjudicates a child a delinquent child, on the judge's own motion, may conduct *at the time of disposition of the child or*, if the court commits the child for the delinquent act to the custody of a secure facility, may conduct *at the time of the child's release from the secure facility*, a hearing for the purposes described in division (B)(2) of this section * * *. (Emphasis added.)

{¶ 13} "The statute makes clear that the timing of the hearing depends on whether the juvenile court commits the delinquent child to a secure facility. If the child is

---

[1] L.N. was not subject to juvenile sex offender registration in the 2015 GSI case because he was thirteen at the time of the delinquent act. R.C. 2152.82(A); 2152.83(A)(1) and (B)(1).

7.

committed to a secure facility, the juvenile court may conduct the classification hearing at either the time of disposition or upon the child's release from that facility." *In re O.P.*, 8th Dist. Cuyahoga No. 105429, 2018-Ohio-580, ¶ 10 ("[B]ecause the juvenile court did not commit O.P. to a secure facility, it was without authority to hold a classification hearing upon his release from the [the halfway house]" where he had been placed).

In this appeal, L.N. challenges the timing of his classification hearing. He claims that the juvenile court was limited to conducting the hearing *either* at the time of disposition, on October 23, 2014, when he was ordered to JRC *or* at the time he "was released from JRC" on June 18, 2015.[2] He maintains that the statute simply does not allow the court to "delay classification pending completion of dispositional orders on a separate and unrelated matter," i.e., the 2015 GSI case.

**{¶ 14}** First, we address the state's assertion that this court, in *In re. L.N. I*, "specifically held" that the juvenile court "followed" R.C. 2152.83(B)(1). (Brief of plaintiff-appellee at 6, citing *In re L.N. I*, at ¶ 18). To the contrary, we said "[w]e need not, and indeed cannot, decide whether the trial court's decision to hold L.N.'s classification hearing when it did was reasonable, or not, for the reason that the record before us is incomplete." *Id.* at ¶ 19.

**{¶ 15}** Moreover, we agree with L.N.'s argument that the court exceeded its statutory authority. R.C. 2152.83(B)(1) allows the court to hold a classification hearing

---

[2] L.N. does not dispute the state's assertion the JRC qualified as a "secure facility" under R.C. 2950.01(O).

8.

"at the time of disposition" or to defer classification "if [it] commits the child for *the delinquent act* to the custody of a secure facility [until] the time of the child's release from the secure facility."  (Emphasis added.)  In its October 29, 2014 order of disposition, the court deferred classification until L.N.'s release from JRC.  "*The delinquent act*" for which the court committed L.N. to JRC was the offense described in the 2014 GSI case.  As repeatedly discussed, L.N.'s "release" from JRC on June 18, 2015, was effectively a "transfer" to the more restrictive DYS, but, for purposes of classification, that was the court's second, and final, opportunity to conduct a classification hearing.  Any doubt about that may be set aside upon review of the juvenile court's June 23, 2015 judgment entry in which it "terminated" probation and its previous order of placement.  Moreover, "the delinquent act" for which the court then committed L.N. to DYS was for misconduct charged in the 2015 GSI case.  We agree with L.N. that the juvenile court committed plain error in conducting a classification hearing after his release from JRC.  L.N.'s second assignment of error is well-taken.

{¶ 16} In his first assignment of error, L.N. also argues that, once the juvenile court discharged him from probation, its jurisdiction to conduct a juvenile sex offender hearing ended.  In support, L.N. relies upon *State ex rel. Jean-Baptiste*, 134 Ohio St.3d 421, 2012-Ohio-5697, 983 N.E.2d 302, in which the court considered a juvenile court's jurisdiction under R.C. 2152.83(A)(1).  That section pertains to delinquents who commit sexually oriented offenses at the age of 16 or 17, and which *requires* classification, unlike Section (B)(1) which applies to 14 and 15 year olds and makes classification

9.

discretionary.  Sections (A) and (B) are similar, however, in that both provide for conducting the classification hearing at the time of disposition or "at the time of the child's release from the secure facility."  R.C. 2152.83(A)(1) and (B)(1).[3]  In *State ex rel. Jean Baptiste*, the state alleged that the juvenile, at the age of 17, was delinquent for committing the crime of rape of a ten-year-old child.  He was adjudicated delinquent and, following a dispositional hearing, committed to DYS for a minimum of one year and for a maximum period not to extend beyond his 21st birthday, i.e., January 18, 2010.  In 2008, DYS released Jean-Baptiste from its institution, pursuant to an immigration

---

[3] R.C. 2152.83 (A)(1) provides,

 (A) (1) The court that adjudicates a child a delinquent child shall issue *as part of the dispositional order or*, if the court commits the child for the delinquent act to the custody of a secure facility, shall issue *at the time of the child's release from the secure facility*, an order that classifies the child a juvenile offender registrant and specifies that the child has a duty to comply with sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code if all of the following apply:

 (a) The act for which the child is or was adjudicated a delinquent child is a sexually oriented offense or a child-victim oriented offense that the child committed on or after January 1, 2002.

 (b) The child was sixteen or seventeen years of age at the time of committing the offense.

 (c) The court was not required to classify the child a juvenile offender registrant under section 2152.82 of the Revised Code or as both a juvenile offender registrant and a public registry-qualified juvenile offender registrant under section 2152.86 of the Revised Code.  (Emphasis added.)

10.

detainer issued by the United States Department of Homeland Security, and he was transferred to a county jail. The juvenile court did not conduct a juvenile offender classification hearing at that time, but later scheduled one for February 8, 2010, i.e., after his release from DYS *and* after he had turned 21. Jean-Baptiste filed a complaint for a writ of prohibition to prevent the juvenile court from proceeding to classify him as a juvenile offender registrant, arguing that "no statute authorized the court to conduct a classification hearing after he turned 21 years old on January 18, 2010." *Id.* at ¶ 6. The court agreed. It held,

> R.C. 2152.83(A)(1) requires that the court issue an order classifying the child as a juvenile-offender registrant at the time of the child's release from the custody of a secure facility. Because the juvenile court lacks statutory authority to classify Jean-Baptiste after he was released and the court's delinquency disposition has been fully satisfied, we agree with Jean-Baptiste's first proposition of law as applied to this case and hold that the juvenile court lacks jurisdiction to classify Jean-Baptiste, who is now no longer a "child" under the applicable statute. *Id.* at ¶ 32.

{¶ 17} The court found that its conclusion was in "in accord with" *In re Cross*, 96 Ohio St.3d 328, 2002-Ohio-4183, 774 N.E.2d 258, where the court held that, "[a] juvenile court does not have the jurisdiction to reimpose a suspended commitment to a Department of Youth Services facility after a juvenile has been released from probation." *In re Cross* at syllabus. "In keeping with these principles, we concluded that '[w]hen the

court ended Cross's probation, it ended its ability to make further dispositions as to Cross on th[e] delinquency count.'" *State ex rel. Jean-Baptist* at ¶ 29, quoting *In re Cross* at ¶ 28.

{¶ 18} *State ex rel. Jean-Baptiste* presented the situation of a juvenile court attempting to assume jurisdiction over a person after that person had "fully satisfied" the court's delinquency disposition *and* after he had turned 21. The former situation is present in this case, i.e., the juvenile court attempted to assert jurisdiction over L.N. after he had been discharged from probation. Pursuant to *State ex rel. Jean-Baptiste*, we find that the juvenile court had no jurisdiction to impose a classification order after that time, i.e., June 23, 2015. *Accord, State v. Amos*, 1st Dist. Hamilton Nos. C-160717, C-160718, 2017-Ohio-8448, ¶ 15 ("[T]he juvenile court loses jurisdiction over the juvenile after it releases him."). Moreover, we reject the state's argument that this "is not a case where * * * the juvenile court attempted to take action after the case had concluded." That is precisely what occurred in this case. As the June 23, 2015 judgment entry makes clear, the court "terminated" its probation order, and with that termination, signaled the end of the court's jurisdiction over L.N. in the 2014 GSI case.

{¶ 19} As an aside, it is clear that the juvenile court thoughtfully considered the issue of whether, and at what tier, to classify L.N. and further, that its decision to defer classification was purposeful and intended to encourage L.N. to actively participate in his own rehabilitation. Under the circumstances of this case, however, the court lost the

12.

opportunity to classify L.N., following his release from JRC and the termination of his probation.

{¶ 20} We find plain error that is clearly apparent from the face of the record and that it was prejudicial to L.N. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 16. Therefore, the juvenile sex offender classification is reversed, and the juvenile court's order finding L.N. to be a Tier II juvenile sex offender is vacated. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Arlene Singer, J.

Thomas J. Osowik, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE