[Cite as *In re L.S.*, 2018-Ohio-5005.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

In re L.S.

Court of Appeals No. OT-18-013

Trial Court No. 2016-JO-A 304

**DECISION AND JUDGMENT**

Decided: December 14, 2018

* * * * *

Timothy Young, Ohio Public Defender, and Timothy B. Hackett,
Assistant State Public Defender, for appellant.

James J. VanEerten, Ottawa County Prosecuting Attorney, and
Barbara Gallé Rivas, Assistant Prosecuting Attorney, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, L.S., appeals the judgment of the Ottawa County Court of

Common Pleas, Juvenile Division, classifying him as a Tier I sex offender under R.C.

2152.83. For the reasons that follow, we affirm, in part, and reverse, in part.

## I.  Facts and Procedural Background

{¶ 2} On November 14, 2016, the juvenile court adjudicated the 16-year-old appellant delinquent of one count of rape, in violation of R.C. 2907.02(A)(1)(c), a felony of the first degree if committed by an adult.  At disposition on November 21, 2016, the juvenile court committed appellant to the Ohio Department of Youth Services ("DYS") for a minimum period of one year, up to appellant's 21st birthday.  The court suspended the commitment on the condition that appellant:  serve 90 days in the Juvenile Detention Facility, noting that he would be transferred to the Juvenile Residential Center of Northwest Ohio ("JRCNO") upon the opening of an available bed; successfully complete all treatment at JRCNO, including all aftercare recommendations; continue to follow all terms and provisions of probation; and, upon release, successfully complete all terms and provisions of intensive probation.  The court further ordered that a classification hearing for purposes of appellant's sex offender registration be held upon his release from JRCNO.

{¶ 3} On May 26, 2017, the state filed a motion to impose appellant's suspended DYS commitment, asserting that appellant had refused to complete a sex offender treatment program at JRCNO, had become a disruption at the facility, and wished to be sent to DYS.  On May 30, 2017, the juvenile court held a hearing on the motion, and found that appellant failed to successfully complete treatment at JRCNO.  The juvenile court then imposed the suspended DYS commitment and ordered that appellant successfully complete all sex offender treatment at DYS prior to his release.  The juvenile

2.

court did not classify appellant as a juvenile sex offender registrant at the time. Instead, the court noted that "A hearing shall be held to determine the classification of [appellant] as a juvenile sex offender registrant at the time of his release from the secured facility." Appellant filed appeals concerning his original adjudication and the imposition of his suspended commitment to DYS in case Nos. OT-17-021 and OT-17-025, respectively. Those appeals were consolidated, and on November 30, 2018, we released our decision in *In re L.S.*, 6th Dist. Ottawa Nos. OT-17-021, OT-17-025, 2018-Ohio-4758.

{¶ 4} On March 27, 2018, three days before appellant was scheduled to be released from DYS, the juvenile court held the sex offender classification hearing. Appellant moved that the hearing be stayed until the final resolution of his appeals in case Nos. OT-17-021 and OT-17-025, but the juvenile court denied his motion. The juvenile court then classified appellant as a Tier I juvenile offender registrant. The court further informed appellant that, for a period of 10 years, he was required to register with the sheriff of the counties in which he resided, received education, and was employed.

## II. Assignments of Error

{¶ 5} Appellant has timely appealed the juvenile court's judgment classifying him as a sex offender, and now raises two assignments of error for our review:

1. The juvenile court erred as a matter of law when it classified [appellant] nearly 10 months after his release from the secure facility to which he was first committed, in violation of R.C. 2152.83(A).

3.

2.  The registration duties imposed upon [appellant] are unauthorized by and contrary to law, in violation of R.C. 2152.83(A); R.C. 2950.04(A); the Due Process Clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution; and, Article I, Section 16 of the Ohio Constitution.

### III. Analysis

{¶ 6} In his first assignment of error, appellant argues that, under R.C. 2152.83(A), the juvenile court was required to make a juvenile sex offender classification at the time of his release from JRCNO, and because it did not, the court lacked jurisdiction to make the classification prior to appellant's release from DYS.

{¶ 7} "[B]ecause no objection was raised at the trial level regarding the timeliness of the classification hearing, our review is limited to a plain error analysis." *In re L.N.*, 6th Dist. Wood No. WD-16-043, 2018-Ohio-3982, ¶ 10.  Pursuant to Crim.R. 52(B), "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.  Plain error review is available in juvenile delinquency proceedings. *In re L.N.* at ¶ 10.

{¶ 8} Relevant here, R.C. 2152.83(A)(1) provides,

The court that adjudicates a child a delinquent child shall issue as part of the dispositional order or, if the court commits the child for the

delinquent act to the custody of a secure facility, shall issue at the time of the child's release from the secure facility, an order that classifies the child a juvenile offender registrant and specifies that the child has a duty to comply with sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code.

{¶ 9} Appellant argues that the legislature's use of the phrase "release from *the* secure facility" grammatically refers to but one secure facility, in this case, JRCNO. Thus, appellant concludes that the juvenile court was required to classify him as a juvenile offender registrant at the time that he left JRCNO. Appellant asserts that the juvenile court even acknowledged this duty in its original disposition entry when it stated, "[A] classification hearing for purposes of juvenile sex offender registration shall be held upon the juvenile's release from [JRCNO]."

{¶ 10} The state, on the other hand, argues that appellant was not "released" from JRCNO as contemplated in R.C. 2152.83(A) because he was not released to the community or to a non-secure facility, but rather he was transferred to a different secure facility. The state contends that if the statute were read to require a classification hearing upon any transfer from the original secure facility, even where the transfer is to another secure facility, it would frustrate the legislature's arguable purpose to delay the classification hearing until after the juvenile has taken advantage of the opportunities provided in the secure facility for reformation and rehabilitation. *See In re F.L.S.*, 4th Dist. Washington No. 09CA24, 2009-Ohio-6958, ¶ 13 ("The likely rationale behind R.C.

5.

2152.83(A)(1)'s requirement that a court wait until the juvenile offender has been released from custody is to give the offender time to rehabilitate and reform himself.  The juvenile offender therefore has an incentive to do well while in DYS custody in order to persuade the court to classify him at a lower tier level.").  Thus, the state concludes that the trial court was not required to hold a classification hearing when appellant left JRCNO.

{¶ 11} In response, appellant argues that "release" does not mean only "release to a non-secure facility or to the community."  In support, appellant cites *State ex rel. Jean-Baptiste v. Kirsch*, 134 Ohio St.3d 421, 2012-Ohio-5697, 983 N.E.2d 302, ¶ 28, as an example of a juvenile who was "released" under R.C. 2152.83(A) when he left DYS and was sent to the county jail.  However, our review of *Jean-Baptiste* leads us to a different interpretation.

{¶ 12} In *Jean-Baptiste*, Jean-Baptiste sought a writ of prohibition to prevent the juvenile court from classifying him as a juvenile-offender registrant in a delinquency case after he turned 21 years old.  Previously, Jean-Baptiste had been adjudicated delinquent for committing a rape of a ten-year-old child when he was 17 years old.  The juvenile court committed Jean-Baptiste to the custody of DYS for a maximum period not to extend beyond his 21st birthday, which was January 18, 2010.  On May 23, 2008, the United States Department of Homeland Security placed an immigration detainer on Jean-Baptiste to assume custody of him.  On July 17, 2008, DYS released Jean-Baptiste from its institution, and he was held in the county jail until hearings could be conducted

6.

to determine his citizenship. Thereafter, in December 2009, DYS notified the juvenile court that on January 18, 2010, Jean-Baptiste would be discharged from the department's legal custody. The juvenile court scheduled a status conference in the juvenile case for January 15, 2010, but continued it because Jean-Baptiste was still in the county jail and would not be released until January 26, 2010. The juvenile court then ordered that Jean-Baptiste's juvenile-offender classification hearing be held on February 8, 2010, approximately three weeks after his 21st birthday.

{¶ 13} The Ohio Supreme Court agreed with Jean-Baptiste's proposition that the juvenile court patently and unambiguously lacked jurisdiction to conduct the February 8, 2010 classification hearing because he had turned 21 on January 18, 2010. The court noted that while juvenile courts retain jurisdiction over adjudication and disposition matters even after a juvenile turns 21, the same does not apply to classifications under R.C. 2152.83(A)(1), where classification is done at the time that the juvenile is released from a secure facility. *Jean-Baptiste* at ¶ 20-24.[1] The court reasoned,

> Because Jean-Baptiste was adjudicated a delinquent child and was committed to a secure facility, the statute is clear that the court must issue the order classifying the child as a juvenile-offender registrant at the time the child is released from the secure facility—not afterward. The statute is

---

[1] The Ohio Supreme Court drew a distinction between *Jean-Baptiste* and *State ex rel. N.A. v. Cross*, 125 Ohio St.3d 6, 2010-Ohio-1471, 925 N.E.2d 614, which allowed a juvenile to be classified as a juvenile-offender registrant after he had turned 21 years old because the classification was done at the time of disposition.

7.

logical, given that the juvenile-offender registrant may be subject to certain registration requirements upon his or her release into the community. Because Jean-Baptiste was released on the day that he turned 21 and because R.C. 2152.83 specifies that classification must occur when a child is released from a secure facility, the juvenile court patently and unambiguously lacks jurisdiction to classify Jean-Baptiste after his 21st birthday, when he was no longer a child. *Id.* at ¶ 28.

Thus, the court concluded,

R.C. 2152.83(A)(1) requires that the court issue an order classifying the child as a juvenile-offender registrant at the time of the child's release from the custody of a secure facility. Because the juvenile court lacks statutory authority to classify Jean-Baptiste after he was released and the court's delinquency disposition has been fully satisfied, we agree with Jean-Baptiste's first proposition of law as applied to this case and hold that the juvenile court lacks jurisdiction to classify Jean-Baptiste, who is now no longer a "child" under the applicable statute. *Id.* at ¶ 32.

{¶ 14} We recognize that *Jean-Baptiste* does not directly address the question of when a juvenile is "released" from a secure facility. But, to the extent that it contemplates the issue, *Jean-Baptiste* contravenes the proposition espoused by appellant. Following appellant's proposition, Jean-Baptiste would have been "released" under R.C. 2152.83(A) when he was transferred from the DYS facility to the county jail in July

8.

2008, thereby triggering the juvenile court's obligation to hold a juvenile offender classification hearing at that time. In contrast, the Ohio Supreme Court rationalized its decision on the fact that Jean-Baptiste was over the age of 21, and since the classification hearing was not part of his original adjudication or disposition, the juvenile court lacked jurisdiction over him at the time that he was released from the custody of DYS on January 18, 2010. Thus, by applying this rationale, the Ohio Supreme Court implicitly recognized that Jean-Baptiste was not "released" from the secure facility, and the juvenile court was not required to hold a classification hearing, at the time that he was transferred to the county jail.

{¶ 15} We find that the interpretation implicitly recognized by the Ohio Supreme Court is reasonable and comports with the plain language of the statute. "The object of judicial investigation in the construction of a statute is to ascertain and give effect to the intent of the law-making body which enacted it." *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 11, quoting *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574, paragraph one of the syllabus. "[T]he intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation." *Id.* at ¶ 12, quoting *Slingluff* at paragraph two of the syllabus. "If [the statute] is ambiguous, we must then interpret the statute to determine the General Assembly's intent. If it is not ambiguous, then we need not interpret it; we must simply apply it." *Id.* at ¶ 13.

9.

{¶ 16} Here, R.C. 2152.83(A)(1) imposes a binary framework for when the classification hearing must be held: is the juvenile placed into the custody of a secure facility, or is the juvenile not placed into the custody of a secure facility? If the juvenile is placed into the custody of a secure facility, then the classification must take place upon his or her release. If the juvenile is not placed into the custody of a secure facility, then the classification must take place at disposition. Thus, the defining characteristic is whether the juvenile is in custody or is in the community, not, as appellant argues, the location of the juvenile's custody. In this way, "[t]he statute is logical, given that the juvenile-offender registrant may be subject to certain registration requirements upon his or her *release into the community*." (Emphasis added.) *Jean-Baptiste*, 134 Ohio St.3d 421, 2012-Ohio-5697, 983 N.E.2d 302, at ¶ 28.

{¶ 17} For the same reasons, the trial court's order in its original disposition that a sexual classification hearing would take place upon appellant's release from JRCNO was also logical. In our view, the order contemplated that appellant's term at JRCNO would be successfully completed and he would then be released into the community. Thus, the order was a recognition, not of the obligation to hold a classification hearing when appellant was released from JRCNO for any reason, but of the obligation to hold a classification hearing when appellant was released into the community. Unfortunately, in this case, appellant did not successfully complete his term at JRCNO, and he was instead transferred to DYS.

10.

**{¶ 18}** Therefore, we hold that, under R.C. 2152.83(A)(1), the juvenile court was not required to hold a classification hearing at the time when appellant was transferred from JRCNO to DYS.

**{¶ 19}** As a final matter on this assignment of error, we note that our holding today is not in conflict with *In re L.N.*, 6th Dist. Wood No. WD-16-043, 2018-Ohio-3982, which the parties reference. In that case, L.N. was adjudicated delinquent to the offense of gross sexual imposition (the "2014 GSI case"). At disposition, the juvenile court ordered him committed to DYS for six months and for a maximum period not to extend beyond his 21st birthday. The court suspended the commitment on the condition that L.N. complete treatment at JRCNO. The court, under R.C. 2152.83(B)(1), deferred the matter of classification until L.N.'s release from JRCNO.[2] While at JRCNO, a separate complaint was filed against L.N. based on conduct that occurred prior to the conduct for which he was currently committed (the "2015 GSI case"). At a subsequent hearing on the two matters, and two other complaints that alleged probation violations while L.N. was at JRCNO, the court terminated L.N.'s probation in the 2014 GSI case.

---

[2] R.C. 2152.83(B)(1) provides, "The court that adjudicates a child a delinquent child, on the judge's own motion, may conduct at the time of disposition of the child or, if the court commits the child for the delinquent act to the custody of a secure facility, may conduct at the time of the child's release from the secure facility a hearing for the purposes described in division (B)(2) of this section * * *." The use of the phrase "may" as opposed to "shall" gives the juvenile court some discretion in the timing of the classification hearing. *See In re L.N.* at ¶ 13 ("If the child is committed to a secure facility, the juvenile court may conduct the classification hearing at either the time of disposition or upon the child's release from that facility.").

11.

The court then ordered him to be committed to DYS in the 2015 GSI case. Upon his release from DYS, the court held a hearing and classified L.N. as a Tier II juvenile sex offender registrant in the 2014 GSI case. In the subsequent appeal of his classification, L.N. argued that the juvenile court erred when it held a juvenile sex offender classification hearing over one year after he had been released from JRCNO. We agreed, and vacated L.N.'s classification. *Id.* at ¶ 20.

{¶ 20} However, *In re L.N.* is distinguishable from the present case. Specifically, *In re L.N.* involved a unique situation where the juvenile court terminated probation, "and with that termination, signaled the end of the court's jurisdiction over L.N. in the 2014 GSI case." *Id.* at ¶ 18. The court did not impose the suspended commitment in the 2014 GSI case, but instead committed L.N. to DYS for his conduct in the 2015 GSI case. Because L.N. fully satisfied the juvenile court's disposition as to the 2014 GSI case at the time his probation was terminated, the court lost jurisdiction over him to impose a classification order after that time. *Id.* Here, in contrast, the juvenile court imposed the suspended commitment to DYS upon appellant when it found that he violated the terms of his probation. Thus, appellant had not fully satisfied the court's disposition prior to his release from DYS, and consequently the juvenile court still had jurisdiction to hold a classification hearing.

{¶ 21} Therefore, we hold that the juvenile court had jurisdiction to conduct a classification hearing at the time appellant was released from DYS.

{¶ 22} Accordingly, appellant's first assignment of error is not well-taken.

**{¶ 23}** In his second assignment of error, appellant argues that the juvenile court's order that he was required to register with the sheriffs of the counties in which he worked and received education is contrary to law. The state concedes that the juvenile court erred in this regard.

**{¶ 24}** R.C. 2950.04(A)(3)(a) requires a juvenile offender registrant to register with the sheriff of the county in which the juvenile lives or is temporarily domiciled. R.C. 2950.04(A)(3)(b) further imposes upon "public registry-qualified juvenile offender registrants" the obligation to register with the sheriff in the counties in which they attend school and are employed. R.C. 2152.86 provides the requirements for a child to be classified a "public registry-qualified juvenile offender registrant," and imposes upon that classification of juvenile offenders "an automatic, lifetime requirement of sex-offender registration and notification, including placement on a public Internet registry." *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729. However, the Ohio Supreme Court has held R.C. 2152.86 unconstitutional as it violates the Due Process Clause and the prohibitions against cruel and unusual punishment. *Id.* at ¶ 86. Therefore, the registration requirements under R.C. 2950.04(A)(3)(b) are not applicable, and the juvenile court erred in requiring appellant to register with the sheriff of the county in which he worked and attended school.

**{¶ 25}** Accordingly, appellant's second assignment of error is well-taken.

13.

## IV. Conclusion

**{¶ 26}** For the foregoing reasons, we find that substantial justice has not been done the party complaining, and the judgment of the Ottawa County Court of Common Pleas, Juvenile Division, is affirmed, in part, and reversed, in part. Specifically, the juvenile court's order classifying appellant a Tier I juvenile offender registrant is affirmed. The portion of the court's order requiring appellant to register with the sheriff of the county of his place of education and employment is reversed and vacated. Costs of this appeal are to be split evenly between the parties pursuant to App.R. 24.

Judgment affirmed, in part,<br>and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.                      _____
                                                   JUDGE

James D. Jensen, J.

                                                       _____
Christine E. Mayle, P.J.                                    JUDGE
CONCUR.

                                                       _____
                                                     JUDGE

> This decision is subject to further editing by the Supreme Court of
> Ohio's Reporter of Decisions. Parties interested in viewing the final reported
> version are advised to visit the Ohio Supreme Court's web site at:
> http://www.supremecourt.ohio.gov/ROD/docs/.