[Cite as *State v. McKinney*, 2015-Ohio-4398.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-140743 |
| | | C-140744 |
| Plaintiff-Appellee, | : | TRIAL NOS. B-1405986 |
| | | B-1402233 |
| vs. | : | |
| DEMARCO MCKINNEY, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Criminal Appeals From:  Hamilton County Court of Common Pleas

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal:  October 23, 2015

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Gordon C. Magella*, Assistant Public Defender, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1}     These are consolidated appeals by a juvenile from convictions entered in adult court.   In the first case, the juvenile presents a constitutional challenge to provisions of Ohio law that mandate that certain juvenile matters be transferred to adult court. *See* R.C. 2152.10(A) and 2152.12(A)(1).   We conclude these mandatory "bindover" provisions are constitutional, and uphold his conviction.

{¶2}     The second case involves a discretionary bindover.   The juvenile argues that the court erred in finding that he was not amenable to juvenile court services.   We disagree, and uphold this conviction as well.

## I. Background

{¶3}     In 2012, Demarco McKinney, who was 16 at the time, was charged with conduct that would have constituted aggravated robbery if committed by an adult.   The charge also included firearm specifications.   The state moved to bind the case over to the general division of the common pleas court.   After resolution of a discovery dispute that made it all the way to the Ohio Supreme Court, the juvenile court conducted a bindover hearing.   *See In re D.M.*, 140 Ohio St.3d 309, 2014-Ohio-3628, 18 N.E.3d 404.   The court found that there was probable cause McKinney had committed the crime and that bindover was mandatory.   *See* R.C. 2152.10(A)(2)(b).   McKinney objected to mandatory bindover on the ground that the statutes were unconstitutional, but the court rejected his constitutional claim.

{¶4}     In 2014, McKinney was charged with conduct that would have constituted robbery if committed by an adult.   The court found that probable cause existed and scheduled an amenability hearing.   Following the hearing, the court

concluded that McKinney was not amenable to juvenile treatment and relinquished jurisdiction to the general division of the court of common pleas.

{¶5}    In the adult court, McKinney entered into a plea and sentencing agreement whereby he pled guilty to both charges and received seven years in the Ohio Department of Corrections.  These appeals followed.

## II. Mandatory Bindover

{¶6}    In his first assignment of error, McKinney challenges the constitutionality of the mandatory-bindover provisions under which the juvenile court relinquished jurisdiction to the adult court.   The statutes at issue, R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b), require a juvenile court to transfer a case to the general division if the juvenile is 16 or 17 and there is probable cause that the juvenile has committed a category two offense with a firearm.  Aggravated robbery is a category two offense.  R.C. 2152.02(CC)(1).  McKinney argues that the statutes are unconstitutional, because they divest the juvenile court of the ability to make an individualized determination as to whether transferring a particular minor's case to adult court is appropriate.  *See* R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b).   Specifically, McKinney contends that the statutes violate the right to due process, the right to equal protection, and the prohibition against cruel and unusual punishment.

### A.  Waiver

{¶7}    As a preliminary matter, the state maintains that McKinney has either (1) forfeited all but plain error by not objecting to the constitutionality of the mandatory-bindover statutes in the general division or (2) waived any challenge by entering an agreed plea.  *See State v. Rogers*, ___ Ohio St.3d ___, 2015-Ohio-2459, ___ N.E.3d ___, ¶ 20-21.

{¶8} The state relies on *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, for the proposition that McKinney forfeited all but plain error when he failed to object to the constitutionality of the mandatory-bindover provisions at the time of his plea and sentencing in the general division. In *Quarterman*, however, the defendant failed to object *both* in the juvenile court and the general division. *Id.* Here, McKinney objected to the constitutionality of the mandatory-bindover statutes immediately after the juvenile court found that the bindover was mandatory. Because the juvenile court's decision to transfer the case was not a final, appealable order, McKinney could only appeal following his conviction in the general division. *In re Becker*, 39 Ohio St.2d 84, 87, 314 N.E.2d 158 (1974). By raising his objection at the time that he was bound over by the juvenile court, McKinney properly preserved his objection. *See State v. Kelly*, 3d Dist. Union No. 14-98-26, 1998 Ohio App. LEXIS 5630, *6 (Nov. 18, 1998).

{¶9} The state also argues that McKinney waived all errors, including plain error, because he pled guilty. It remains the law in Ohio, however, that "[w]hile a counseled plea of guilty * * * removes issues of factual guilt from the case, a defendant is not precluded from raising on appeal other issues which attack the constitutionality of the statute under which he has been convicted." *State v. Wilson*, 58 Ohio St.2d 52, 388 N.E.2d 745 (1979), syllabus. Thus, a guilty plea will prevent a defendant from raising "constitutional violations not logically inconsistent with the valid establishment of factual guilt," but it does not prevent a claim "that the [s]tate may not convict [the defendant] no matter how validly his factual guilt is established." *Id.* at 54, quoting *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975).

{¶10} Because McKinney's claim is that he may not be convicted in adult court regardless of factual guilt, his guilty plea did not waive his constitutional challenge to the

4

bindover statutes. *Accord State v. Lane*, 11th Dist. Geauga No. 2013-G-3144, 2014-Ohio-2010, ¶ 43; *but see State v. Bradford*, 5th Dist. Stark No. 2013CA00124, 2014-Ohio-904, ¶ 77 (holding that a defendant who pleads guilty waives his right to challenge the constitutionality of the mandatory bindover).

### B. Due Process

{¶11}   McKinney contends the mandatory-bindover statutes violate his right to due process as guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Section 16 of the Ohio Constitution. He argues that the Due Process Clause requires an individualized determination of his amenability before he may be transferred to adult court.

{¶12}   The Due Process Clause, of course, prevents the deprivation of life, liberty or property without due process of the law. Although its text seems to be limited to matters of procedure, the clause has been held to contain a substantive component that forbids certain government action regardless of the procedures employed. *See Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Because McKinney's argument contains shades of both substantive and procedural due process, we will consider both aspects of the Due Process Clause. We start with the clause's procedural protections.

### 1. Procedural Due Process

{¶13}   A procedural-due-process challenge concerns the adequacy of the procedures employed in a government action that deprives one of life, liberty or property. We question whether the transfer of jurisdiction implicates the Due Process Clause at all. The transfer didn't deprive McKinney of his liberty. That happened later, when the general division of the common pleas court found him guilty and imposed

sentence. The bindover proceeding simply changed the forum in which his guilt or innocence was to be determined.

{¶14} But even if we were to assume that there is some liberty interest in being tried in juvenile court, there has been no violation of due process. Under the scheme that McKinney attacks, the only findings required to be made by the juvenile court were that the offender was 16 or 17 and that probable cause existed. Once these findings were made, McKinney was required to be bound over by legislative enactment. McKinney does not argue that his due-process rights were trampled on by the juvenile court's determination of probable cause, but rather by the legislature's determination that once probable cause was found to exist transfer was mandatory.

{¶15} The problem with this argument is that when the legislature passes a law of generalized application, the legislative process provides all the process that is due. *See* 3 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law*, Section 17.8 (2015). Thus, in *Connecticut Dept. of Pub. Safety v. Doe*, 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003), the United States Supreme Court held that a petitioner could not mount a procedural-due-process challenge to a Connecticut statute that did not allow convicted sex offenders an opportunity for a hearing before sex-offender-registry information was publicly disclosed. The court explained that because the fact the petitioner sought to prove—that he was not currently dangerous—was of no consequence under the statute, there was no procedural-due-process right to a hearing. *Id.* at 8; *see Michael H. v. Gerald D.*, 491 U.S. 110, 120, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) (plurality opinion). Here, the fact that McKinney seeks to prove—that he is amenable to treatment in the juvenile system—is of no consequence under the statutory scheme. Thus, there is no procedural-due-process right to an individualized determination in juvenile court.

{¶16} In arguing that he was entitled to additional procedural-due-process protections before transfer, McKinney cites the United States Supreme Court's decision in *Kent v. United States*, 383 U.S. 541, 556-57, 86 S.Ct. 1045, 16 L.Ed. 84 (1966). At issue in *Kent* was a District of Columbia statute, which provided that a juvenile court judge could waive jurisdiction over the juvenile after a full investigation, but included no definitive procedures. *Kent* at 556-557. The Supreme Court determined that a court must conduct a hearing, provide assistance of counsel, and disseminate a statement with the reasons for transferring the juvenile to adult court. *Id.* at 554. Additionally, the court provided eight factors that juvenile courts should consider when determining whether to transfer a juvenile. *Id.* at 565-567. But the question in *Kent* involved only the procedures due for a discretionary transfer. *Kent* is best read as standing for the simple proposition that when the legislature has established a right to an individualized determination prior to a discretionary transfer, the procedures employed must comport with due process.

{¶17} *Kent* has never been held to require that its procedure must be applied where the legislature had mandated bindover to adult court. To the contrary, schemes that mandate that certain classes of juveniles be tried as adults have been routinely upheld by the federal courts. *See, e.g., United States v. Juvenile*, 228 F.3d 987 (9th Cir.2000); *Woodward v. Wainright*, 556 F.2d 781 (5th Cir.1977). Ohio courts have similarly distinguished *Kent* as being limited to issues of arbitrary decision-making and disparate treatment in discretionary-bindover determinations. *See,* e.*g., Kelly*, 3d Dist. Union No. 14-98-26, 1998 Ohio App. LEXIS 5630, at *19-20.

{¶18} Thus, we conclude that McKinney suffered no violation of the procedural protections of the Due Process Clause.

## 2. Substantive Due Process

{¶19}    McKinney's attack on the legislative determination that 16 and 17 year olds who are found likely to have committed certain crimes must be tried in adult court is best understood as raising a challenge under the "substantive component" of the Due Process Clause.  In considering the issue, we are mindful of the admonition that we must be "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 771 (1997), quoting *Collins v. Harker Hts.*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

{¶20}    In a substantive-due-process challenge, "the first (and often last) issue * * * is the proper characterization of the individual's asserted right." *Blau v. Fort Thomas Pub. School Dist.*, 401 F.3d 381, 393 (6th Cir.2005).  Government actions that infringe on a fundamental right are subject to strict scrutiny, while those that do not need only be rationally related to a legitimate government interest.  *Id.*; *see State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512.

{¶21}    There is nothing in the United States or Ohio Constitutions that guarantees a juvenile the right to be tried in juvenile court.  Certainly, neither the framers of the Ohio Constitution in 1851, nor the ratifiers of the Fourteenth Amendment in 1868, contemplated that the clauses would have any application to juvenile-bindover hearings.  The first juvenile court was established in 1899 in Cook County, Illinois.  Cuyahoga County was the first in Ohio to create a juvenile court in 1902.  *In re Alger*, 19 Ohio St.2d 70, 73, 249 N.E.2d 808 (1969); F.R. Aumann, *The Juvenile Court Movement in Ohio*, 22 Am.Inst.Crim.L. & Criminology 556, 557 (1931-1932).

{¶22}    It has been widely understood that bindover proceedings do not implicate a fundamental right.  *See, e.g., State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-

5059, 775 N.E.2d 829, ¶ 17; *State v. Adams*, 10th Dist. Franklin No. 12AP-83, 2012-Ohio-5088, ¶ 19-20. Because there is no fundamental right at issue, the enactment must only survive rational-basis review. Upon such review, "a state has no obligation to produce evidence to sustain the rationality of a statutory classification." *Columbia Gas Transm. Corp. v. Levin*, 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶ 91. Rather, "[t]he party challenging the constitutionality of a statute 'bears the burden to negate every conceivable basis that might support the legislation.' " *Pickaway Cty. Skilled Gaming, L.L.C. v. Cordray*, 127 Ohio St.3d 104, 2010-Ohio-4908, 936 N.E.2d 944, quoting *Columbia Gas* at ¶ 91.

{¶23} Plainly, the legislature had a rational basis for the enactment. It could have rationally determined that crimes involving firearms committed by older juveniles were sufficiently serious that society would not be adequately protected by the more lenient juvenile court system. Because there was a rational basis for the legislative enactment, there was no violation of the substantive component of the Due Process Clause.

{¶24} McKinney looks to the Ohio Supreme Court's decision in *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, for support. In *C.P.*, the court found that a statute that imposed lifetime registration requirements on certain sex offenders tried within the juvenile system violated the constitutional prohibition against cruel and unusual punishment as well as due-process guarantees. Although the court was not specific in the taxonomy of its due-process analysis, under traditional norms of jurisprudence *C.P.* should be considered a substantive-due-process case, because it concerned the validity of the legislative enactment. *See* Rotunda & Nowak, *supra*. In its analysis, however, the court looked to the procedural-due-process principle of fundamental fairness that the court had previously held was applicable to juvenile

9

proceedings. *C.P.* at ¶ 71, citing *State v. D.H.,* 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209. Applying this principle, we find nothing in *C.P.* that supports the conclusion that the mandatory-bindover provisions at issue here are unconstitutional.

{¶25} Thus, we conclude that the mandatory-bindover procedures violate neither the substantive nor procedural protection of the Due Process Clauses of the federal and state constitutions. We are not alone in this conclusion. Every other Ohio district to have addressed the issue has reached the same conclusion. *See State v. Ponyard,* 8th Dist. Cuyahoga No. 101266, 2015-Ohio-311, ¶ 17; *State v. J.T.S.,* 10th Dist. Franklin No. 14AP-516, 2015-Ohio-1103; *State v. Mays,* 2014-Ohio-3815, 18 N.E.3d 850 (8th Dist.); *Kelly,* 3d Dist. Union No. 14-98-26, 1998 Ohio App. LEXIS 5630; *State v. Lee,* 11th Dist. Lake No. 97-L-091, 1998 Ohio App. LEXIS 4250 (Sept. 11, 1998); *State v. Collins,* 9th Dist. Lorain No. 97CA006845, 1998 Ohio App. LEXIS 2474 (June 3, 1998); *State v. Ramey,* 2d Dist. Montgomery No. 16442, 1998 Ohio App. LEXIS 2617 (May 22, 1998).

### C. Equal Protection

{¶26} McKinney also claims that the mandatory transfer violates his right to equal protection under the law by treating similarly situated minors differently based solely on their ages.

{¶27} Just as in the substantive-due-process analysis, the first step in an equal-protection challenge is determining the level of scrutiny to be employed. Where a classification does not burden a fundamental right or involve a suspect classification, we only look to see whether the classification bears a rational relation to a legitimate state objective. *State v. Thompkins,* 75 Ohio St.3d 558, 561, 664 N.E.2d 926 (1996). As we have explained above, there is no fundamental right to be tried in juvenile court.

Similarly, age is not a suspect classification. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 82-84, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000).

{¶28} The statute plainly survives rational-basis review. As the Tenth District put it, the General Assembly's choice to "single out older juvenile homicide offenders, who are potentially more street-wise, hardened, dangerous, and violent, is rationally related to this legitimate governmental purpose of protecting society and reducing violent crime by juveniles." *J.T.S.*, 10th Dist. Franklin No. 14AP-516, 2015-Ohio-1103, at ¶ 45.

{¶29} We join the Tenth–as well as the Second, Third, Ninth, and Eleventh Districts–in concluding that the mandatory-bindover statutes are rationally related to a legitimate governmental purpose and do not violate equal protection. *See id.*; *Lane*, 11th Dist. Geauga No. 2013-G-3144, 2014-Ohio-2010; *Kelly*, 3d Dist. Union No. 14-98-26, 1998 Ohio App. LEXIS 5630; *Collins*, 9th Dist. Lorain No. 97CA006845, 1998 Ohio App. LEXIS 2474; *Ramey*, 2d Dist. Montgomery No. 16442, 1998 Ohio App. LEXIS 2617.

### D. Cruel and Unusual Punishment

{¶30} McKinney also maintains that subjecting certain 16 and 17 year olds to punishment in the adult system violates the Eighth Amendment's prohibition against the "infliction of cruel and unusual punishments." But to implicate the Eighth Amendment's ban on cruel and unusual punishments, there must be a punishment. Mandatory bindover does not constitute punishment: it simply changes the forum where punishment is determined. *E.g.*, *State v. Anderson*, 2d Dist. Montgomery No. 25689, 2014-Ohio-4245, ¶ 79-80. Because a mandatory bindover is not "a penalty or confinement inflicted * * * pursuant to a sentence of the juvenile court," it does not constitute cruel and unusual punishment. *Lane* at ¶ 74.

11

{¶31}   Finding no constitutional violation, we overrule McKinney's first assignment of error.

### III.   Discretionary Transfer

{¶32}   In his second assignment of error, McKinney contends that the court abused its discretion when it transferred his robbery case to adult court.  He argues bindover was inappropriate because (1) the court's expert concluded he should remain in juvenile court, (2) he had no prior felony adjudications, and (3) he had few opportunities to access juvenile court services.

{¶33}   R.C. 2152.12(B) permits the juvenile court to transfer a case alleging the juvenile has committed an act that would be a felony if committed by an adult if the court finds that (1) at the time of the offense, the juvenile was 14 or older, (2) probable cause exists that the juvenile committed the act charged, and (3) the juvenile is not amenable to care or rehabilitation in the juvenile system.  McKinney challenges only the court's amenability finding.

{¶34}   Because it is highly individualized and inherently fact-based, a juvenile court's amenability determination is reviewed under an abuse-of-discretion standard. *In re M.P.,* 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, ¶ 14.  To determine amenability in the juvenile system, the court must consider the statutory factors provided in R.C. 2151.12(D) and (E).  Here, the trial court considered (1) testimony of a juvenile court clinical psychologist, (2) the details of the robbery charges, and (3) McKinney's age, history of disruptive behavior, substance-abuse problem, and unsuccessful prior treatment.  Eyewitnesses testified that McKinney struck the victim when he helped steal his wallet.  The court noted that McKinney had threatened his peers, that he had reverted to unsatisfactory behavior even after intensive outpatient treatment and community-based treatment, and that the victim had been beaten.  The

court explained that McKinney was emotionally mature, that prior treatment had not rehabilitated McKinney, and that, given his age, the juvenile system would not have sufficient time to rehabilitate him. We cannot say that the juvenile court abused its discretion in deciding to transfer McKinney's robbery case to adult court. McKinney's second assignment of error is overruled.

### IV. Conclusion

{¶35}    We overrule McKinney's assignments of error, and we affirm the trial court's judgments.

Judgments affirmed.

**CUNNINGHAM, P.J.,** and **STAUTBERG, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.