[Cite as *In re N.D.*, 2021-Ohio-4506.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN RE: N.D., A MINOR CHILD | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| | : | |
| | : | Case No. 21 CA 0040 |
| | : | 21 CA 0041 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Licking County Court of Common Pleas, Juvenile Division, case nos. A2017-0471 and A2017-0439 |

| | |
|---|---|
| JUDGMENT: | AFFIRMED |

| | |
|---|---|
| DATE OF JUDGMENT ENTRY: | December 17, 2021 |

APPEARANCES:

| For Plaintiff-Appellee: | For Defendant-Appellant: |
|---|---|
| WILLIAM HAYES | OFFICE OF THE OHIO PUBLIC DEFENDER |
| LICKING CO. PROSECUTOR | LAUREN HAMMERSMITH |
| PAULA M. SAWYERS | Assistant State Public Defender |
| 20 South Second St., Fourth Floor | 250 East Broad St., Suite 1400 |
| Newark, OH 43055 | Columbus, OH 43215 |

*Delaney, J.*

{¶1} Appellant N.D. appeals from the April 30, 2021 Judgment Entry of the Licking County Court of Common Pleas, Juvenile Division. Appellee is the state of Ohio.

{¶2} The instant appeals are related but not consolidated. This matter arose from two separate juvenile court case numbers: A20170439 and A20170471. The briefs and sole assignment of error in both cases are identical.

## FACTS AND PROCEDURAL HISTORY

{¶3} In case number A20170471, appellant was adjudicated to be a delinquent child upon three counts of gross sexual imposition (G.S.I.), all felonies of the third degree pursuant to R.C. 2907.05(A)(4), and one count of G.S.I. pursuant to R.C. 2907.05(A)(1), a felony of the fourth degree. In case number A20170439, appellant was adjudicated to be a delinquent child upon one count of G.S.I., a felony of the third degree pursuant to R.C. 2907.05(A)(4). Each count is a "sexually oriented offense" pursuant to R.C. 2950.01(A)(1). Four of the counts are subject to discretionary classification pursuant to R.C. 2152.83(B).

{¶4} A single count--Count VII in case number A20170471—rendered appellant subject to mandatory classification pursuant to R.C. 2152.83(A)(1) because the offense occurred between the dates of September 1, 2016 to March 1, 2017, when appellant was 16 to 17 years old.

{¶5} A dispositional hearing was held on November 3, 2017, and appellant was classified as a Tier II juvenile sex offender registrant for a period of 20 years with in-person verification every 180 days.

{¶6} On January 9, 2020, appellant's classification was modified following a classification review hearing after his discharge from a secure facility. Appellant was then classified as a Tier I juvenile sex offender registrant for a period of 10 years with in-person verification annually.

{¶7}   Appellant was released from parole on September 16, 2020.

*Motion and hearing for declassification*

{¶8} Appellant filed a motion for declassification pursuant to R.C. 2152.84 and the matter proceeded to an evidentiary hearing on April 29, 2021. The following evidence is adduced from the record of the hearing.

{¶9}   The trial court noted the following evidence submitted by the parties:

> * * * *.
>
> I've recently reviewed the contents of each of the files before me, including the motion filed on behalf of [appellant], each progress review summary, the release decision summary, and discharge decision summary all previously submitted to the Court by the Ohio Department of Youth Services regarding [appellant]. I have also reviewed all written reports submitted to this Court by the Probation Department included in the written report of Probation Officer Lindsay Rogers filed on April 27th, 2021, recommending a continuation of [appellant's] current classification requirements.
>
> And I have reviewed the notice of supplemental exhibit to motion for declassification that was filed by [defense trial counsel] on April 28th, 2021, being an email from [appellant's] former parole

officer, * * * [and] a letter from [appellant's] treatment provider at Osterlen? * * * *.

T. 10-11.

{¶10} Appellee reiterated its position that it opposed appellant's declassification. T. 12.

{¶11} Appellant's probation officer appeared and stated that in addition to the written report she submitted, allegations existed that appellant contacted two of the victims upon his release from detention and was dating a minor child as of the hearing date. T. 12.

{¶12} The Victim Advocate noted the victims report ongoing trauma from appellant's offenses, and also stated appellant contacted two of the victims upon his release from detention. The victims and their families collectively opposed appellant's declassification. T. 14.

{¶13} Appellant's guardian ad litem (G.A.L.) opined appellant was statutorily ineligible for declassification, but added that if the trial court deemed him eligible, she supported declassification. The G.A.L. stated:

> * * * *.

> It's my opinion that he has gone above and beyond what's been asked of him. He successfully completed treatment. He's become employed. He completed parole successfully; in fact, that he had no violations. And I believe that if there had been some sort of contact with the victim, I would have to believe that that would have been reported to the parole officer upon his release from DYS.

So at this time, I would be in support of that if the Court deems

that he is eligible.

* * * *.

T. 14-15.

{¶14} Appellant's Father testified on his behalf. Father said appellant lives alone in an apartment in Columbus, and Father and son for the same communications firm. They install Wi-Fi and internet service. Someone observed appellant working in a children's hospital and reported him to security because they were aware of the instant case. The employer did not fire appellant but instead transferred his work location. When cross-examined about appellant's current girlfriend, Father said she was 18 years old.

*Exhibit: probation officer's report of April 27, 2021*

{¶15} Appellant's probation officer testified at the hearing and provided a written report dated April 27, 2021. The report is in the record for our review and we note the following pertinent facts.

{¶16} Appellant applied for judicial release while committed to DYS, but his request was denied because appellant was engaged in a consensual sexual relationship with another youth in the facility, resulting in his removal from the program and not having completed Phase 2 of substance abuse training.

{¶17} Appellant's parole officer told probation that appellant did "fantastic" and successfully completed parole, including graduating from high school, beginning an apprenticeship with a heating and cooling provider, and engaging in aftercare services to address problematic sexual behaviors.

{¶18} Appellant first became involved in the juvenile justice system in 2015 when he was placed on diversion for possession of criminal tools. The nature of the offense was sending nude photos of himself and receiving photos of a peer-aged female. Appellant was found to be in violation of the diversion contract when he was found in possession of a cell phone which he used to access Facebook, send more nude photos to a female via Snapchat, and to send a sexually-explicit note to a female at school. These offenses occurred while appellant was on court supervision. Diversion was terminated and he was placed on probation.

{¶19} In the instant G.S.I. cases, appellant offended against five victims ranging in age from 5 years old to 15 years old. Appellant self-reported that each victim was victimized two to three times with the exception of one.

{¶20} An element of physical force was involved in terms of appellant preventing smaller victims from resisting such as grabbing the victim's arm and forcing her to touch his penis.

{¶21} Appellant did complete sex-offender-specific programming while at DYS. He also continued in aftercare and worked on addressing problematic sexual behaviors.

{¶22} Appellant reported that he forced others to engage in sexual encounters. His older victims asked him to stop on several occasions however their pleas were ignored. He used physical force with at least one victim by forcefully taking that victim's hand and placing it on his penis. He did not consider how this made his victims feel and the long-term effects that his actions could cause.

{¶23} Appellant displayed a history of sexual abuse and acting out as evidenced by his prior court contact.  During his court supervision his level of risk increased and then

continued when in a secured facility by engaging in a sexual relationship with another youth knowing that it was against the policy causing him to be removed from the program. He has only recently begun to display any remorse or empathy for his actions/victims.

{¶24} The report concludes:

* * * *.

At this time due to information above such as the age of all but one of the victims being under the age of 13, the number of times the abuse occurred, [the] fact that he has a history of inappropriate sexual behaviors leading to multiple delinquency adjudications, acting out sexually while in a secure placement, and displaying little victim empathy, Probation Department would recommend that [appellant] continued to register as a TIER I Juvenile Sex Offender Registrant at this time.

* * * *.

*Exhibit: parole officer's email dated April 26, 2021*

{¶25} Appellant offered an email from his parole officer as an exhibit at the hearing. The email states the following in pertinent part:

* * * *.

My name is Kyle L. Dickinson Parole Officer for the Ohio Department of Youth Services and I was the parole officer for [appellant] from co 12/21/19 to 9/16/20. During that period of time [appellant] complied with any and all that was requested of him. Upon release [appellant] was placed in Springfield, Ohio, living with

his mother. [Appellant] enrolled in OIC and completed class work allowing him to obtain his diploma. [Appellant] contacted Oesterlen for Youth and was involved in Sex Offender counseling. His counselor was Bob Hayes and he attended the entire time he lived in Springfield and was terminated successfully by Mr. Hays. Bob said that [appellant] was very knowledgeable concerning his flags and triggers and had a solid plan of prevention and thought process not to re-offend. [Appellant] was registered as a tier one sex offender in Clark Co. he [*sic*] signed up with Andria Trego  SORN Officer with Clark Co. Sheriff's Dept. phone number [XXX].  When [appellant] was getting ready to be successfully terminated from parole he contacted Officer Trego and asked about transferring his registration to Licking County and she assisted him. [Appellant] completed his 20 hour[s] of community service at the Clark County Humane Society, without any complaint whatsoever.  I met with [appellant] weekly either at his home or at various work sites.  [Appellant] was always willing to meet with this writer and was always polite and pleasant. [Appellant] was employed the entire time he was on parole aftercare.  [Appellant] took the initiative to find employment in heating and cooling. He worked in Springfield and surrounding areas for [Heating and Cooling Company]. [Appellant] obtained an apprenticeship with them while he worked there. I met with [appellant] on the job on several occasions and they said he did a good job.

[Appellant] has successfully completed every aspect of his parole above and beyond expectations.

* * * *.

{¶26} At the conclusion of the hearing, the trial court noted appellant was subject to mandatory classification pursuant to R.C. 2152.83(A) and the effectiveness of his disposition was subject to review pursuant to R.C. 2152.84 to determine the risk that appellant might re-offend and to review the prior classification and tier level.

{¶27} The trial court did note that pursuant to R.C. 2151.84(A)(2), it was limited to continuing appellant's classification as a Juvenile Offender Registrant and the prior determination as a Tier I sex offender. However, the trial court noted, "Regardless of statutory limitations, based upon this Court's review and the information presented, the Court does find that [appellant]'s classification as a juvenile offender registrant and prior determination as a Tier I sex offender shall continue." T. 35-36.

{¶28} Appellant now appeals from the trial court's decision to continue his classification as a Tier I sex offender.

{¶29} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶30} "THE LICKING COUNTY JUVENILE COURT ERRED WHEN IT DENIED N.D.'S MOTION FOR DECLASSIFICATION FROM THE JUVENILE SEX OFFENSE REGISTRY, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."

**ANALYSIS**

{¶31} Appellant argues he was denied due process of law because he was statutorily prevented from declassification as a Tier I juvenile sex offender.  We disagree.

{¶32} In the instant case, the relevant count at issue is Count VII in case number A2017047, rendering appellant subject to mandatory classification pursuant to R.C. 2152.83(A)(1) because the offense occurred when he was 16 to 17 years old. Appellant argues that because R.C. 2152.84(A)(2)(c) prevents his declassification, he has been denied due process.

*Classification of juvenile sex offenders*

{¶33} The Ohio Supreme Court provided a helpful overview of the classification process for juvenile sex offenders in *In re R.B.,* 162 Ohio St.3d 281, 2020-Ohio-5476, 165 N.E.3d 288, *reconsideration denied sub nom. In re R.B*, 160 Ohio St.3d 1511, 2020-Ohio-6835, 159 N.E.3d 1167, at ¶ 4-5:

> When a juvenile commits a sex offense, the juvenile court has the ability to classify the juvenile as a sex offender. *See generally* R.C. 2152.82 through 2152.86; 2007 Am.Sub.S.B. No. 10 (Ohio's Adam Walsh Act). A juvenile who has been classified as a sex offender has certain legal obligations, such as registering and periodically verifying his address in person with the sheriff. *See* R.C. 2950.07. The frequency with which the juvenile must report and the duration of his reporting requirements depend on the level of the classification imposed. *Id.*
>
> Unlike adult offenders, whose classification levels are based solely on the underlying offense, *see* R.C. 2950.01, the juvenile court

has discretion to determine the appropriate classification for a juvenile offender, *see* R.C. 2152.83(A)(2) and (B)(2). Additionally, while adult classifications flow directly from the conviction and are not subject to modification, the juvenile court retains jurisdiction to review a juvenile offender's classification. The classification process is set forth in a series of statutes (the "classification statutes"). The juvenile court conducts a hearing at the time of the juvenile's disposition, *see* R.C. 2152.83, and at the time the juvenile completes the disposition, *see* R.C. 2152.84. After that, the juvenile may petition the juvenile court for review every three or five years. *See* R.C. 2152.85.

{¶34} R.C. 2152.83 addresses the "initial classification hearing" in the words of the Ohio Supreme Court. *In re R.B.*, 162 Ohio St.3d 281, 2020-Ohio-5476, 165 N.E.3d 288, *reconsideration denied sub nom. In re R.B*, 160 Ohio St.3d 1511, 2020-Ohio-6835, 159 N.E.3d 1167, ¶ 8. In the instant case, appellant was subject to R.C. 2152.83(A) because he was 16 or 17 years old at the time of the relevant offense.[1]  The trial court

———————————————

[1] R.C. 2152.83(A)(1) states:

> The court that adjudicates a child a delinquent child shall issue as part of the dispositional order or, if the court commits the child for the delinquent act to the custody of a secure facility, shall issue at the time of the child's release from the secure facility an order that classifies the child a juvenile offender registrant and specifies that the child has a duty to comply with sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code if all of the following apply:
> (a) The act for which the child is or was adjudicated a delinquent child is a sexually oriented offense or a child-victim oriented offense that the child committed on or after January 1, 2002.

must notify the juvenile of his registration and reporting requirements. R.C. 2152.83(C)(3). The court is also required to tell the juvenile that a second hearing will be held at the end of his disposition pursuant to R.C. 2152.84 and that his classification may be modified or terminated at that time. R.C. 2152.83(C)(3). R.C. 2152.83(E) provides that the initial classification order "shall remain in effect for the period of time specified in section 2950.07 of the Revised Code, subject to a modification or termination of the order under section 2152.84 of the Revised Code."

{¶35} R.C. 2950.07 outlines the duration of a juvenile offender's duty to register. For a juvenile classified as a Tier I offender, the duty to register lasts for 10 years; for a Tier II juvenile offender, the obligation continues for 20 years; and a juvenile classified as a Tier III offender must register for life. R.C. 2950.07(B). Further, "[t]he child's attainment of eighteen or twenty-one years of age does not affect or terminate the order, and the order remains in effect for the period of time described in this division." R.C. 2152.83(E).

{¶36} The issue presented by the instant appeal involves appellant's completion-of-disposition hearing described in R.C. 2152.84.  That section states in pertinent part:

----

(b) The child was sixteen or seventeen years of age at the time of committing the offense.

(c) The court was not required to classify the child a juvenile offender registrant under section 2152.82 of the Revised Code or as both a juvenile offender registrant and a public registry-qualified juvenile offender registrant under section 2152.86 of the Revised Code.

(2) Prior to issuing the order required by division (A)(2) of this section, the judge shall conduct a hearing under section 2152.831 of the Revised Code, except as otherwise provided in that section, to determine whether the child is a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender. When a judge issues an order under division (A)(1) of this section, the judge shall include in the order the determinations identified in division (B) (5) of section 2152.82 of the Revised Code.

(A)(1) When a juvenile court judge issues an order under * * * division (A) * * * of section 2152.83 of the Revised Code that classifies a delinquent child a juvenile offender registrant and specifies that the child has a duty to comply with sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code, upon completion of the disposition of that child made for the sexually oriented offense or the child-victim oriented offense on which the juvenile offender registrant order was based, the judge or the judge's successor in office shall conduct a hearing to review the effectiveness of the disposition and of any treatment provided for the child, to determine the risks that the child might re-offend, to determine whether the prior classification of the child as a juvenile offender registrant should be continued or terminated as provided under division (A)(2) of this section, and to determine whether its prior determination made at the hearing held pursuant to section 2152.831 of the Revised Code as to whether the child is a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender should be continued or modified as provided under division (A)(2) of this section.

(2) Upon completion of a hearing under division (A)(1) of this section, the judge, in the judge's discretion and after consideration of all relevant factors, including but not limited to, the factors listed in

division (D) of section 2152.83 of the Revised Code, shall do one of the following as applicable:

(a) Enter an order that continues the classification of the delinquent child as a juvenile offender registrant made in the prior order issued under section 2152.82 or division (A) or (B) of section 2152.83 of the Revised Code and the prior determination included in the order that the child is a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender, whichever is applicable;

(b) If the prior order was issued under division (B) of section 2152.83 of the Revised Code, enter an order that contains a determination that the delinquent child no longer is a juvenile offender registrant and no longer has a duty to comply with sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code. An order issued under division (A)(2)(b) of this section also terminates all prior determinations that the child is a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender, whichever is applicable. Division (A)(2)(b) of this section does not apply to a prior order issued under section 2152.82 or division (A) of section 2152.83 of the Revised Code.

(c) If the prior order was issued under section 2152.82 or division (A) or (B) of section 2152.83 of the Revised Code, enter an

order that continues the classification of the delinquent child as a juvenile offender registrant made in the prior order issued under section 2152.82 or division (A) or (B) of section 2152.83 of the Revised Code, and that modifies the prior determination made at the hearing held pursuant to section 2152.831 of the Revised Code that the child is a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender, whichever is applicable. An order issued under division (A)(2)(c) of this section shall not include a determination that increases to a higher tier the tier classification of the delinquent child. An order issued under division (A)(2)(c) of this section shall specify the new determination made by the court at a hearing held pursuant to division (A)(1) of this section as to whether the child is a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender, whichever is applicable.

(B)(1) If a judge issues an order under division (A)(2)(a) of this section that continues the prior classification of the delinquent child as a juvenile offender registrant and the prior determination included in the order that the child is a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender, whichever is applicable, the prior classification and the prior determination shall remain in effect.

(2) A judge may issue an order under division (A)(2)(c) of this section that contains a determination that reclassifies a child from a tier III sex offender/child-victim offender classification to a tier II sex offender/child-victim offender classification or to a tier I sex offender/child-victim offender classification.

A judge may issue an order under division (A)(2)(c) of this section that contains a determination that reclassifies a child from a tier II sex offender/child-victim offender classification. A judge may not issue an order under that division that contains a determination that reclassifies a child from a tier II sex offender/child-victim offender classification to a tier III sex offender/child-victim offender classification.

A judge may not issue an order under division (A)(2)(c) of this section that contains a determination that reclassifies a child from a tier I sex offender/child-victim offender classification to a tier II sex offender/child-victim offender classification or to a tier III sex offender/child-victim offender classification.

If a judge issues an order under this division that contains a determination that reclassifies a child, the judge shall provide a copy of the order to the delinquent child and the bureau of criminal identification and investigation, and the bureau, upon receipt of the copy of the order, promptly shall notify the sheriff with whom the child

most recently registered under section 2950.04 or 2950.041 of the Revised Code of the determination and reclassification.

(3) If a judge issues an order under division (A)(2)(b) of this section that declassifies the delinquent child as a juvenile offender registrant, the judge shall provide a copy of the order to the bureau of criminal identification and investigation, and the bureau, upon receipt of the copy of the order, promptly shall notify the sheriff with whom the child most recently registered under section 2950.04 or 2950.041 of the Revised Code of the declassification.

(C) If a judge issues an order under division (A)(2)(a), (b), or (c) of this section, the judge shall provide to the delinquent child and to the delinquent child's parent, guardian, or custodian a copy of the order and, if applicable, a notice containing the information described in divisions (A) and (B) of section 2950.03 of the Revised Code. The judge shall provide the notice at the time of the issuance of the order and shall comply with divisions (B) and (C) of that section regarding that notice and the provision of it.

(D) An order issued under division (A)(2)(a) or (c) of this section and any determinations included in the order shall remain in effect for the period of time specified in section 2950.07 of the Revised Code, subject to a modification or termination of the order under section 2152.85 of the Revised Code, and section 2152.851 of the Revised Code applies regarding the order and the

determinations. If an order is issued under division (A)(2)(a) or (c) of this section, the child's attainment of eighteen or twenty-one years of age does not affect or terminate the order, and the order remains in effect for the period of time described in this division.

* * * *.

{¶37} Finally, R.C. 2152.85 allows a juvenile classified as a sex offender to petition the juvenile court at certain intervals to have his classification modified or removed (we will call this the "periodic-review provision"). The juvenile may first petition the court for review three years after the completion-of-disposition hearing. R.C. 2152.85(B)(1). The juvenile may petition the court a second time three years after the first petition was filed, R.C. 2152.85(B)(2), and then every five years after that for the duration of the registration period, R.C. 2152.85(B)(3). *See also In re D.S.*, 146 Ohio St.3d 182, 2016-Ohio-1027, 54 N.E.3d 1184, ¶ 36.

*Procedural due process and classification of juvenile sex offenders*

{¶38} Appellant argues R.C. 2152.84(A)(2)(a) effectively prevents the juvenile court from declassifying mandatory registrants, thereby rendering the hearing meaningless. Appellant asks us to agree with the First District Court of Appeals in finding R.C. 2152.84 violative of the due process rights of mandatory Tier I registrants. *In re D.R.,* 1st Dist. Hamilton No. C-190594, 2021-Ohio-1797, 173 N.E.3d 103, ¶ 16, appeal allowed*,* 164 Ohio St.3d 1460, 2021-Ohio-3594.

{¶39} Due process in the context of the juvenile justice system is guided by principles of fundamental fairness. "Constitutional procedural safeguards in the juvenile context find their genesis in the Due Process Clause of the Fourteenth Amendment to the

United States Constitution." *In re D.R.*, 5th Dist. Knox No. 13CA27, 2014-Ohio-588, ¶ 17, citing *State v. D.H.,* 120 Ohio St.3d 540, 2009–Ohio–9, 901 N.E.2d 209, ¶ 44. "Due process standards as they relate to juvenile proceedings are inexact; this court has held that 'fundamental fairness is the overarching concern.'" *Id.* at ¶ 51; *In re C.P.,* 131 Ohio St.3d 513, 2012–Ohio–1446, 967 N.E.2d 729, ¶ 71.

{¶40} The right to procedural due process is found in the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution. The United States Supreme Court has explained, "From the inception of the juvenile court system, wide differences have been tolerated—indeed insisted upon—between the procedural rights accorded to adults and those of juveniles." *In re Gault*, 387 U.S. 1, 14, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Although certain constitutional protections afforded adults, including notice, confrontation, the right to counsel, the privilege against self-incrimination, and freedom from double jeopardy, are applicable to juvenile proceedings, other protections, including trial by jury, are not. See *Schall v. Martin*, 467 U.S. 253, 263, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984); *McKeiver v. Pennsylvania*, 403 U.S. 528, 545, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); *In re Agler*, 19 Ohio St.2d 70, 78, 249 N.E.2d 808 (1969).

{¶41} The United States Supreme Court has expressly recognized that "the Constitution does not mandate elimination of all differences in the treatment of juveniles." *Schall* at 263. In fact, the Supreme Court has expressly recognized that the "acceptance of juvenile courts distinct from the adult criminal justice system assumes that juvenile offenders constitutionally may be treated differently from adults." *Bellotti v. Baird*, 443 U.S. 622, 635, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979). This different treatment is justified

because of the state's interest in preserving and promoting the welfare of the child. *Schall*; *McKeiver*.

{¶42} Juvenile proceedings are "civil" rather than criminal and, in theory, the priority of the juvenile system has been rehabilitation, rather than punishment. Society generally refuses to penalize youth offenders as harshly or to hold them to the same level of culpability as adults, who are older and, presumably, wiser and more mature. Unless bound over to the adult criminal system by a discretionary process, youthful offenders are adjudicated to be "juvenile delinquents" and are placed in special juvenile rehabilitation and detention centers. In line with the traditional view of the treatment of juveniles, punishment is not the goal of the Ohio juvenile system, except as necessary to direct the child toward the goal of rehabilitation. *In re Caldwell*, 76 Ohio St.3d 156, 157, 666 N.E.2d 1367 (1996).

{¶43} Fundamental fairness requires that juveniles be protected from "oppression, harassment, or egregious deprivation." *In re W.Z.*, 6th Dist. No. S-09-036, 194 Ohio App.3d 610, 2011-Ohio-3238, 957 N.E.2d 367, ¶ 63.

{¶44} Turning to appellant's argument, we find R.C. 2152.84 does not violate his right to procedural due process because we do not find that appellant has a substantive due process right to removal of the Tier I classification at the R.C. 2152.84 completion-of-disposition hearing.

{¶45} Appellant argues the mandatory nature of the continued Tier-I classification in the case of a 16- or 17-year-old offender effectively removes the discretion of the juvenile court. Brief, 7. "However, the special discretion of the juvenile court judge sometimes yields to the directives of the legislature." *In re D.C.*, 1st Dist. No. C-180354,

2019-Ohio-4860, 149 N.E.3d 989, ¶ 37. The legislature could have rationally determined that sex offenses committed by 16- and 17-year-olds were sufficiently serious that the juvenile offenders are not to be declassified at the completion-of-disposition hearing. See, *State v. McKinney*, 2015-Ohio-4398, 46 N.E.3d 179, ¶ 23 (1st Dist.) [legislature could have "rationally determined that crimes involving firearms committed by older juveniles were sufficiently serious that society would not be adequately protected by the more lenient juvenile court system"]. Especially under the circumstances of the instant case, fundamental fairness does not require elimination of appellant's Tier I juvenile sex offender classification.

{¶46} We also find that R.C. 2152.84 does not eliminate all meaningful discretion from the juvenile court. The court retains discretion to determine which tier to apply to the offender. The completion-of-disposition hearing requires the court to evaluate the offender's progress. Finally, the duty to register may be removed in three years. Appellant is not consigned to perpetual registration as a Tier I sex offender; his classification remains subject to review pursuant to R.C. 2152.85.

{¶47} Finally, we note that we are not convinced the instant case is ripe for review. Underlying appellant's argument is the unfounded assertion that he would have been declassified at the hearing if the statute permitted the trial court to do so; this premise is belied by the record of the hearing. The trial court noted that regardless of the unchangeability of the Tier I classification, declassification was not appropriate in the instant case regardless. T. 35-36.

{¶48} Thus, the timing of appellant's due process challenge is questionable because he is not a candidate for declassification at this time. The Ohio Supreme Court

discussed the concept of ripeness for review in *State ex rel. Elyria Foundry Co. v. Indus. Comm.,* 82 Ohio St.3d 88, 89, 1998-Ohio-366, 694 N.E.2d 459:

{¶49} Ripeness "is peculiarly a question of timing." *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140, 95 S.Ct. 335, 42 L.Ed.2d 320, 351 (1974). The ripeness doctrine is motivated in part by the desire "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies * * *." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). As one writer has observed:

> "The basic principle of ripeness may be derived from the conclusion that 'judicial machinery should be conserved for problems which are real or present and imminent, not squandered on problems which are abstract or hypothetical or remote.' * * * [T]he prerequisite of ripeness is a limitation on jurisdiction that is nevertheless basically optimistic as regards the prospects of a day in court: the time for judicial relief is simply not yet arrived, even though the alleged action of the defendant foretells legal injury to the plaintiff." Comment, Mootness and Ripeness: The Postman Always Rings Twice, 65 Colum. L.Rev. 867, 876 (1965).
>
> *State v. Clark*, 5th Dist. Licking No. 2020 CA 00017, 2020-Ohio-5013, ¶ 9-10.

{¶50} We find appellant's argument that he was entitled to declassification unavailing, further undermining his contention that he was deprived of procedural due

process. Appellant had no substantive right to declassification because the trial court would not have declassified him regardless of the effect of R.C. 2152.84(A)(2)(a).

{¶51} Appellant's sole assignment of error is overruled and the judgment of the Licking County Court of Common Pleas, Juvenile Division is affirmed.

## CONCLUSION

{¶52} Appellant's sole assignment of error is overruled and the judgment of the Licking County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Wise, Earle, J., concur.